## Strode *versus* Commonwealth.
## Clymer *versus* Commonwealth.

<div style="float: right;">
52 181
f196 75

52    181
22 SC ³372
</div>

1. The estate of a decedent, composed of United States securities, passing collaterally, is liable to collateral inheritance tax.
2. Such tax is not on a specific article, but on the *estate* of the decedent.
3. The acceptance by distributees of specific articles without conversion, in payment of their shares, does not relieve them from collateral inheritance tax.
4. Theoretically, the balance on an administration account is cash.

ERROR to the Court of Common Pleas of *Chester county.*

This was an amicable action between the Commonwealth and Joseph C. Strode, executor, &c., of Caleb Strode, deceased, in which a case was stated for the opinion of the court.

Caleb Strode died in February 1865, having made his will, proved February 22d 1865, by which he gave, *inter alia*, all the residue of his estate to his sisters Edith and Esther.

Joseph was qualified, and assumed the executorship.

There was appraised, as subject to collateral inheritance tax, the following personal estate, viz.:

United States five-twenty bonds, authorized by Act of Congress, of February 25th 1862, amounting to . . . $3150.00
Premium on same at 10 per cent. . . . 315.00
Other personal property . . . . 1349.38
The whole amount of collateral appraisement on the bonds was $3465.

Joseph C. Strode, the executor, filed an account, which has been duly confirmed, showing that he had paid all the debts of the estate out of assets other than said bonds, and that there remained a balance due the legatees of the personal property, amounting to $3659.96, of which the said bonds constituted a part, amounting to $3465.

The said executor, in settlement of the balances due the residuary legatees, transferred to them specifically the said United States bonds at the sum at which they were appraised.

The question for the opinion of the court is, whether under the laws of the United States, and of the state of Pennsylvania, the said bonds, appraised and taken at $3465, are liable to pay to the state a collateral inheritance tax of 5 per cent. on the latter amount.

[Strode *v.* Commonwealth.]

If they are so subject, the judgment to be given in favour of the Commonwealth for the sum of $173.25, with costs.

If they are not so subject, then judgment for the defendant with costs.

The court below (Butler, P. J.) gave judgment for the Commonwealth for $173.25, delivering the following opinion:—

" In McCulloch *v.* Maryland, 4 Wheat. 316, the Supreme Court of the United States declared that the several states 'have no power by taxation or otherwise, to retard, impede, burthen or in any way control the operations of the constitutional laws enacted by Congress to carry into execution the powers vested in the general government.' And this principle is affirmed by the cases of Weston *v.* The City of Charleston, 2 Peters 449 ; Osborne *v.* The Bank of the United States, 9 Wheat. 738 ; Dobbin *v.* The Commissioners of Erie county, 16 Peters 435 ; Bank of Commerce *v.* The Commissioners, 2 Black 620 ; and the Bank Tax cases in 2 Wallace 200.

" And it was, therefore, decided that the states cannot impose taxes on the banks formerly established under the laws of the general government, nor on the offices held by the government's agents. It would seem to be clear, therefore, independently of the prohibition contained in the statutes authorizing the recent loans, that the states cannot tax the bonds issued by the general government.

" In the case before us it is urged that what is claimed by the plaintiff is not a *tax*. But if this were determined to be so, it would not seem to advance us in the inquiry which the case presents. If not a '*tax*' it certainly is a *burthen*, and if imposed on the bonds of the United States, or on the owner of such bonds, in respect to them, it would be obnoxious to the objection which the defendant makes. But is it imposed on the bonds or on an owner of them ? What is called a 'collateral inheritance tax,' is a bonus, exacted from the collateral kindred and others, as the condition on which they may be admitted to take the estate left by a deceased relative or testator. The estate does not belong to them, except as a right to it is conferred by the state. Independently of government no such right could exist. The death of the owner of property would necessarily terminate his control over it, and it would pass to the first who might obtain possession. The right of the owner to transfer it to another after death, or of kindred to succeed, is the result of municipal regulation, and must, consequently, be enjoyed subject to such conditions as the state sees fit to impose. See Black. Com. 2d book, pp. 10, 11, 12, 13. And we see the state continually imposing new conditions ; sometimes enlarging, at others restraining, the privilege, and sometimes again entirely taking it away, by changing the parties who are to succeed. In Pennsylvania up to 1833 we

[Strode v. Commonwealth.]

followed the rule of the common law in ascertaining the 'next of kin.' Since that time we have pursued the rule of the civil law, which by employing a different mode of computation frequently confers the estate on an entirely different class of kindred. Up to 1855, if an intestate left brothers and sisters entitled to inherit, and also the grandchildren of a deceased brother or sister (their immediate parent also being dead), the brothers and sisters took the entire estate. Since that time they are required to share it with the grandchildren. Up to the same period when nephews and nieces, the children of several brothers and sisters, alone were entitled to inherit, they shared the estate equally. Since that time they take *per stirpes*, so that if there be six, one of them representing one deceased brother, and the other five another, this one now takes as much as the other five. These instances are sufficient for illustration; they might be almost indefinitely multiplied. They show how constantly the state asserts its right to control the disposition of decedents' estates. And it does so whether there be a will or not. If the decedent leaves a wife, the state gives her more than one-third of his personalty and a share of his realty, though he may have willed otherwise. Blackstone in speaking of this subject says: 'Nothing varies more than the right of inheritance and testament, under the different national establishments. In England particularly is this diversity carried to such a length as if it had been meant to point out the power of the law in regulating the succession to property, and how futile every claim must be that has not its foundation in the positive rules of the state. For instance, in personalty the father may succeed to his children; in landed property he never can be their heir by the remotest possibility. In general only the oldest son, in some places only the youngest, in others all the sons together, have a right to succeed to the inheritance. In realty males are preferred to females, and the eldest male will usually exclude the rest, while in the disposition of the personalty females are admitted with the males, and no right of primogeniture is allowed.'

" I repeat, therefore, as the right to take by succession and testament is derived from the state, it must necessarily be enjoyed subject to such conditions as the state may impose. And if a condition be that the kindred or legatees shall pay a bonus, this is not a tax or burthen imposed on *their property*, or on the property of anybody else. It is simply the price of the privilege which the state has conferred upon them. If they do not choose to avail themselves of the privilege they need not pay the price, and are no worse off than before.

" I have thus far treated the question as if the distribution was to be of the *bonds*. But in the case before us, as in all cases of general legacies and intestacy, this is not so. The law contem-

plates the reduction of the estate to money. It is as for money the administrator accounts, and it is only for money he can be compelled to account for distribution. The distributees cannot be required to accept anything else. If the estate consist of ordinary bonds, they are collected; if of public bonds, they are sold in the market like other chattels of the deceased. Frequently, it is true, by an arrangement with the distributees, bonds and other securities are transferred to them in the stead of money, and equity might interfere to prevent a sale of such securities where the distributees offer to take them, and a sale is unnecessary. But in such cases the distributees take from the administrator or executor, as any other transferree would, and must be regarded as purchasers. They agree to accept the bonds instead of the money to which they are entitled. It is in effect an investment of their shares in these securities.

" If, therefore, the ' Collateral Inheritance Tax' could be regarded as a burthen imposed on property belonging to the distributees, it would not be on the *bonds*, but on the *money* before it was thus invested."

The court entered judgment for the plaintiff according to the case stated; which was the error assigned.

*W. Townsend,* for plaintiff in error.—The states cannot tax the means by which Congress is authorized to put into execution its enumerated powers: McCulloch *v.* Maryland, 4 Wheat. 316; Osborn *v.* Bank of United States, 9 Wheat. 738; Weston *v.* Charleston, 2 Peters 467; Dobbins *v.* Erie, 16 Id. 448. Whether applied directly to government stock: Bank of Commerce *v.* New York City, 2 Black 620, Id. 635 note; or the capital of banks composed of United States stocks: Bank Tax Cases, 2 Wallace 200.

The state, in return for the taxation she imposes on her citizens holding ordinary bonds, provides remedies for the collection; but she can afford no such remedy against the United States. The support to the state by the citizen, and the protection of the citizen by the state, are reciprocal duties. How can these stocks be taxed on the principles referred to ? They do not exist, nor are they introduced into the state, by its authority, but by the paramount authority of the United States. To allow these bonds to be taxed would allow a state to nullify the Acts of Congress. It would make congressional legislation unequal, for Pennsylvania might tax and Delaware might not.

The court below admitted these principles, but denied their application to this case.

The collateral tax is a tax in the ordinary meaning of the term, and not a rule of succession. If the tax be not paid the succession is not changed. The estate is taxed as that of a living man.

[Strode *v.* Commonwealth.]

The executor cannot surrender the bond to the legatee till the tax is paid; this shows that the tax is on the bond.

That these bonds were not specifically bequeathed does not weaken the case, because the debts being paid from other sources the legatees took them specifically : Verner's Estate, 6 Watts 250.

It is admitted that the bonds are assets, but that does not alter their national character. They were also property absolute in the legatees after the debts were paid.

*W. B. Waddell* and *P. Frazer Smith,* for defendant in error.— The tax is not imposed upon the bonds, but on the assets of Caleb Strode's estate. The balance on his account is payable to the legatees in cash, and the decree for its payment would not be to deliver bonds, but to pay so much cash. If these securities were of less value than par, and the executor had no credit in his account for the depreciation, he would be bound to pay the whole amount in cash. If the depreciation occurred. after filing his account. the court might correct it so as to relieve him, if he were in no default, but whilst uncorrected he would be answerable for the full balance. Under no circumstances could he compel the distributees to take securities instead of money. Then if payable in money as collateral estate, it would without question be subject to the tax. The executor could not be compelled to deliver securities specifically to the legatees ; he would be accountable in money if he sold them at a sacrifice. The collateral tax does not operate on the specific things of which the estate is composed, but on the estate itself. If distributees take the securities for their shares, the value at which they take them is the price, and is to be treated as if a sale had been made to strangers.