McGANNON, *Admx.*, v. STATE *ex rel.* TRAPP *et al.*

No. 2669.   Opinion Filed May 14, 1912.

(124 Pac. 1063.)

1.  **TAXATION** — Statutes — Nature of Tax — Uniformity — Exemptions—Local or Special Laws. The act of May 26, 1908 (Laws 1908, c. 81, art. 11), which imposes a tax upon inheritances, is a tax upon the transitus of the property, and not upon the property.

    (a)  Being a tax on the transitus of property, it is not in conflict with article 10, sec. 6, of the Constitution.

    (b)  Said act is not in conflict with section 5, art. 10 of the Constitution.

    (c)  Being neither a local nor special law which changes the descent or succession of property, said act is not in conflict with article 5, sec. 46, of the Constitution.

2.  **SAME—Levy—Specification of Purpose.** Const. art. 10, sec. 19, providing, ''Every act enacted by the Legislature * * * levying a tax, shall specify distinctly the purpose for which the tax is levied. * * *'' does not apply to act of May 26, 1908 (Laws 1908, c. 81, art. 11), imposing an inheritance tax upon the transfer of property, but applies only to annually recurring taxes.

3.  **STATUTES—Construction—General Rules.** Statutes will be construed in the most beneficial way which their language will permit to prevent absurdity, hardship, or ambiguity, to favor public convenience, and to oppose all prejudice to public interest.

4.  **SAME.** In construing tax laws, where there is any ambiguity or doubt, it must be resolved in favor of the person upon whom it is sought to impose the burden.

5.  **TAXATION—Inheritance Tax—Rate—''For.''** Under Comp. Laws 1909, secs. 7713, 7714, imposing an inheritance tax, fixing the primary rate for class one at one per centum, and providing that, upon all in excess of $5,000 in class one, the primary rate ''shall be increased one one hundred-twenty-fifth of one per centum for

McGannon, Admx., v. State ex rel. Trapp et al.

every $100 increase in valuation of such excess,'' the rate for the entire sum in excess of $5,000 is one and one one hundred-twenty-fifth per cent.; the word ''for'' meaning ''to' be applied to.''

(Syllabus by the Court.)

*Error from District Court, Tulsa County;*
*L. M. Poe, Judge.*

Action by the State, on the relation of M. E. Trapp and others, against Alice S. McGannon, administratrix. From the judgment, defendant brings error. Reversed and remanded.

*Virgil Rule* and *Ledbetter, Stuart & Bell,* for plaintiff in error.

*Chas. West,* Atty. Gen., and *W. C. Reeves,* Asst. Atty. Gen., for the State.

*Preston C. West, amicus curiae.*

TURNER, C. J.   On November 27, 1908, John ·G. McGannon, a resident of Seneca, Mo., died intestate at Tulsa, Okla., leaving property in this state, appraised by the judge of the county court of Tulsa county at $280,000, subject to an act entitled "An act providing for a tax on gifts, inheritances, bequests, legacies, devises and successions in certain cases," approved May 26, 1908.   He left surviving him (it is stipulated) "the following heirs, who will be entitled to receive said property in the following proportions, and under the provisions of said act would be entitled to have said property transferred to them subject to the following exemptions as (and) to said inheritance tax thereon, to wit:   Alice S. McGannon, Seneca, Mo., widow, one-half, or $140,000, less $10,000 exemption, leaving amount subject to transfer from said estate to her of $130,000.   Peter M. McGannon, Aurora, Mo., brother, one-twelfth, or $23,333.33, less exemption of $500, leaving amount to be taxed at $22,833.33.   James F. McGannon, Seneca, Mo., brother, one-twelfth, or $23,333.33, less exemption of $500, leaving amount to be taxed at $22,833.33. Matthew C. McGannon, Nashville, Tenn., brother, one-twelfth, or $23,333.33, less exemption of $500, leaving amount to be taxed at $22,833.33.   Thomas G. McGannon, Lowell, Mass., brother, one-twelfth, or $23,333.33, less exemption of $500, leaving amount

to be taxed at $22,833.33. Susan M. McGannon, Brockville, Ontario, Canada, sister, one-twelfth, or $22,333.33, less exemption of $500, leaving amount to be taxed at $22,833.33. Fred G. McGannon, Winnipeg, Manitoba (formerly of Montreal, Canada), a nephew (descendant of a brother), one forty-eighth, or $5,833.33 less exemption of $500, leaving amount to be taxed at $5,333.33. Mary L. McCormick, a niece, Calgary, Northwest Territory, Canada (descendant of a brother), one forty-eighth, or $5,833.33, less exemption of $500, leaving amount to be taxed at $5,333.33. Edward M. McGannon, a nephew, Brockville, Ontario, Canada (descendant of a brother), one forty-eighth, or $5,833.33, less exemption of $500, leaving amount to be taxed at $5,333.33. Susan M. McGannon, guardian of Wm. Lawrence McGannon, a nephew, Brockville, Ontario, Canada (descendant of a brother), one forty-eighth, or $5,833.33, less exemption of $500, leaving amount to be taxed at $5,333.33."

Concerning the tax imposed by said act on the transfer of the widow's share of the estate, the county judge calculated the same thus:

Alice S. McGannon, the widow:

| | | |
|---|---:|---:|
| Inheritance | $140,000 00 | |
| Exemption | 10,000 00 | |
| | $130,000 00 | |
| Primary rate of one per cent. on first | 5,000 00 | $ 50 00 |
| Excess above primary rate | $125,000 00 | |
| Primary rate of one per cent. on $125,000 | | 1,250 00 |
| Add to primary rate one one hundred-twenty-fifth of one per cent. | | 10 00 |
| | | $1,310 00 |
| Less five per cent. on $1,310.00, if paid in year | | 65 50 |
| Tax | | $1,244 50 |

If this method of calculation is correct, "it is admitted that the assessment made by the county court was correct; and, if this court concurs therein, the assessment should be, viz.:

McGannon, Admx., v. State ex rel. Trapp et al.

|  | Tax | 5% Dis. |  | Amt. Pd. |
|---|---|---|---|---|
| Alice S. McGannon_____ | $1,310 00 | $ 65 50 | equals | $1,244 50 |
| Peter S. McGannon_____ | 346 66 | 17 33 | " | 329 33 |
| Matthew C. McGannon__ | 346 66 | 17 33 | " | 329 33 |
| James F. McGannon____ | 346 66 | 17 33 | " | 329 33 |
| Thomas G. McGannon___ | 346 66 | 17 33 | " | 329 33 |
| Susan M. McGannon____ | 346 66 | 17 33 | " | 329 33 |
| Fred G. McGannon_____ | 80 66 | 4 03 | " | 76 63 |
| Mary L. McCormick_____ | 80 66 | 4 03 | " | 76 63 |
| Edward M. McGannon___ | 80 66 | 4 03 | " | 76 63 |
| Wm. Lawrence McGannon _____ | 80 66 | 4 03 | " | 76 63 |
|  | $3,365 94 | $168 32 |  | $3,197 67" |

On appeal to the district court said tax was calculated thus:
$140,000 00, Inheritance.
  10,000 00, Exemption.

$130,000 00, Subject to taxation.
    5,000 00, Subject to primary rate of one per cent.—$50.00.

$125,000 00, Subject to increase of one one hundred-twenty-fifth of one per cent. on primary rate for each $100.00 of such increase; that is to say, plaintiff claims that the rate on the first $100.00 of the excess over the amount subject to the primary rate would be one per cent. plus one one hundred-twenty-fifth of one per cent., or 1.008 per cent.

On the second $100, that the rate would be one per cent. plus two one hundred-twenty-fifth of one per cent., or 1.016 per cent.

On the third $100 of such increase the rate would be one per cent. plus three one hundred-twenty-fifth, or 1.024 per cent.

In other words, plaintiff claims that the rate increases under the rule of arithmetical progression; so that the rate on the last $100 of the $125,000 would be one per cent. plus one thousand two hundred and fifty one hundred-twenty-fifths of one per cent. or 11 per cent. Plaintiff claims that 1.008 per cent., the rate on the first hundred of such increase, should be added to the 11 per cent., the rate on the 1250th hundred of such increase; and the total, to wit, 12.008 per cent., divided by 2, would give the

average rate of the tax on the $125,000; 12.008 per cent., divided by 2, equals 6.004 per cent. 6.004 per cent. of $125,000 is $7,505: The $50 tax on the $5,000 subject to the "primary rate" of one per cent., plus $7,505, makes a total tax due by Alice S. McGannon of $7,555. From this deduct 5 per cent. of $7,555, or $377.75, if paid within one year, leaving a balance to be paid of $7,177.25.

On this, a proceeding in error of the widow and heirs, it is our duty to determine which of these methods, if either, is correct.

Article 10, sec. 12, of the Constitution, provides:

"The Legislature shall have power to provide for the levy and collection of license, franchise, gross revenue, excise, income, collateral and direct inheritance, legacy, and succession taxes; also graduated income taxes, graduated collateral and direct inheritance taxes, graduated legacy and succession taxes; also stamp, registration, production or other specific taxes."

In *Magoun v. Ill. Trust Co.*, 170 U. S. 283, 18 Sup. Ct. 594, 42 L. Ed. 1037, Justice McKenna said:

"Legacy and inheritance taxes are not new in our laws. They have existed in Pennsylvania for over 60 years, and have been enacted in other states. They are not new in the laws of other countries. In *State v. Alston*, 94 Tenn. 674 [30 S. W. 750, 28 L. R. A. 178], Judge Wilkes gave a short history of them as follows: 'Such taxes were recognized by the Roman law. 1 Gibbon's Decline and Fall of the Roman Empire, pp. 163, 164. They were adopted in England in 1780, and have been much extended since that date. Dowell's History of Taxation in England, 148; Acts 20 Geo. III, c. 28; 45 Geo. III, c. 28; 16 and 17 Vict. c. 51; *Green v. Craft*, 2 H. Bl. 30; *Hill v. Atkinson*, 2 Merivale, 45. Such taxes are now in force generally in the countries of Europe. Review of Reviews, February, 1893. In the United States they were enacted in Pennsylvania in 1826; Maryland, 1844; Delaware, 1869; West Virginia, 1887, and still more recently in Connecticut, New Jersey, Ohio, Maine, Massachusetts, 1891; Tennessee in 1891. Chapter 25 now repealed by chapter 174, Acts 1893. They were adopted in North Carolina in 1846, but repealed in 1883; were enacted in Virginia in 1844, repealed in 1855, re-enacted in 1863, and repealed in 1884.' Other states have also enacted them —Minnesota by constitutional provision. The constitutionality of the taxes has been declared, and the principles upon which they are based explained in *United States v. Perkins*, 163 U. S.

625 [16 Sup. Ct. 1073, 41 L. Ed. 287] ; *Strode v. Commonwealth*, 52 Pa. 181 ; *Eyre v. Jacob*, 14 Grat. (Va.) 422 [73 Am. Dec. 367] ; *Schoofield v. Lynchburg*, 78 Va. 366 ; *State v. Dalrymple*, 70 Md. 294 [17 Atl. 82, 3 L. R. A. 372] ; *Clapp v. Mason*, 94 U. S. 589 [24 L. Ed. 212] ; *In re Merriam's Estate*, 141 N. Y. 479 [36 N. E. 505] ; *State v. Hamlin*, 86 Me. 495 [30 Atl. 76, 25 L. R. A. 632, 41 Am. St. Rep. 569] ; *State v. Alston*, 94 Tenn. 674 [30 S. W. 750, 28 L. R. A. 178] ; *In re Wilmerding*, 117 Cal. 281 [49 Pac. 181] ; Dos Passos, Collateral Inheritance Tax, 20 ; *Minot v. Winthrop*, 162 Mass. 113 [38 N. E. 512, 26 L. R. A. 259] ; *Gelsthorpe v. Furnell* [20 Mont. 299], 51 Pac. 267 [39 L. R. A. 170]. See, also, *Scholey v. Rew*, 23 Wall. 331 [23 L. Ed. 99]. It is not necessary to review these cases, or state at length the reasoning by which they are supported. They are based on two principles: (1) An inheritance tax is not one on property, but one on the succession. (2) The right to take property by devise or descent is the creature of the law, and not a natural right—a privilege, and therefore the authority which confers it may impose conditions upon it. From these principles it is deduced that the states may tax the privilege, discriminate between relatives, and between these and strangers, and grant exemptions; and are not precluded from this power by the provisions of the respective state constitutions requiring uniformity of taxation."

Mr. Hugh Bancroft of the Massachusetts bar says in his book, "Inheritance Taxes for Investors" (1911), that only ten states and the District of Columbia have no inheritance tax law.

In *Re Wilmerding*, 117 Cal. 281, 49 Pac. 181, the court said:

"Similar statutes have been enacted in other states, and with the exception of New Hampshire, have been sustained by the courts in those states upon the ground that the charge thus imposed is in the nature of an excise tax or a tax upon the right of succession, and is within the constitutional power of the Legislature. *State v. Hamlin*, 86 Me. 495 [30 Atl. 76, 25 L. R. A. 632], 41 Am. St. Rep. 569; *Minot v. Winthrop*, 162 Mass. 113 [38 N. E. 512, 26 L. R. A. 259] ; *Hoffman's Estate*, 143 N. Y. 327 [38 N. E. 311] ; *Strode v. Commonwealth*, 52 Pa. 181 ; *State v. Dalrymple*, 70 Md. 294 [17 Atl. 82, 3 L. R. A. 372] ; *Eyre v. Jacob*, 14 Grat. (Va.) 422, 73 Am. Dec. 367 ; *State v. Alston*, 94 Tenn. 674 [30 S. W. 750, 28 L. R. A. 178]. See, also, *United States v. Perkins*, 163 U. S. 625 [16 Sup. Ct. 1073, 41 L. Ed. 287]. * * * The right of inheritance, including the designation of heirs and the proportions which the several heirs shall receive, as well as the right of testamentary dispositions, are en-

tirely matters of statutory enactment, and within the control of the Legislature. As it is only by virtue of the statute that the heir is entitled to receive any of his ancestor's estate, or that the ancestor can divert his estate from the heir, the same authority which confers this privilege may attach to it the condition that a portion of the estate so received shall be contributed to the state, and the portion thus to be contributed is peculiarly within the legislative discretion."

There is no question before us other than the construction of said statute as to the proper rate of taxation to be applied to the transfer of these respective inheritances. Germane to this inquiry, the statute provides:

"Sec. 7712. A tax shall be and 'is hereby imposed upon any transfer of any property, real, personal or mixed, or any interest therein, or income therefrom in trust or otherwise, to any person, association, or corporation, except corporations of this state organized under its laws solely for religious, charitable, or educational purposes, which shall use the property so transferred exclusively for the purposes of their organization within this state, in the following cases: * * * When a transfer is by will or intestate law, of property within the state or within its jurisdiction and the decedent was a nonresident of the state at the time of his death. * * * The tax so imposed shall be upon the clear market value of such property at the rates hereinafter prescribed, and only upon the excess of the exemptions hereinafter granted.

"Sec. 7713. When the property * * * passes by any such transfer, where the amount of the property shall exceed in value the exemptions hereinafter specified, the primary rates of taxation hereinafter imposed shall apply as follows:

"On the first five thousand dollars of such excess, in class one; on the first two thousand dollars of such excess in classes two and three; on the first five hundred dollars of such excess in classes four and five, and shall be:

"Class 1. Where the person or persons entitled to any beneficial interest in such property shall be the husband, wife, lineal issue, lineal ancestors of the decedent or any child adopted as such in conformity with the laws of this state, * * * at the rate of one per centum of the clear value of such interest in such property.

"Class 2. Where the person or persons entitled to any beneficial interest in such property shall be the brother or sister * * * of the decedent, a wife or widow of a son, or the husband of a

daughter of the decedent, at the rate of one and one-half per centum of the clear value of such interest in such property.

"Class 3. Where the person or persons entitled to any beneficial interest in such property shall be the brother or sister of the father or mother, or a descendant of a brother or sister of the father or mother of the decedent, at the rate of three per centum of the clear value of such interest in such property.

"Class 4. Where the person or persons entitled to any beneficial interest in such property shall be the brother or sister of the grandfather or grandmother or a descendant of the brother or sister of the grandfather or grandmother of the decedent, at the rate of four per centum of the clear value of such interest in such property.

"Class 5. Where the person or persons entitled to any beneficial interest in such property shall be in any other degree of collateral consanguinity than is hereinbefore stated, or shall be a stranger in blood to the decedent, or shall be a body politic, or corporate, at the rate of five per centum of the clear value of such interest in such property.

"Sec. 7714. The foregoing rates in section 7713 are for convenience termed the primary rates. Upon all in excess of five thousand dollars, in class one, the primary rate provided for herein shall be increased one one hundred twenty-fifth of one per centum for every one hundred dollars increase in valuation of such excess. Upon all in excess of two thousand dollars, in classes two and three, the primary rate provided for herein shall be increased one-fiftieth of one per centum for every one hundred dollars increase in valuation of such excess. Upon all in excess of five hundred dollars, in classes four and five, the primary rate provided for herein shall be increased one-tenth of one per centum for every one hundred dollars increase in valuation of such excess.

"Sec. 7715. The following exemptions from the tax are hereby allowed:

"All property transferred to corporations of this state organized under its laws solely for religious, charitable or educational purposes * * * shall be exempt.

"Property of the clear value of ten thousand dollars transferred to the widow of the decedent, and five thousand dollars transferred to each of the other persons described in the first division of section 7713, shall be exempt."

Also the following exemptions are noted:

(2) Brother or sister or their descendants, etc._____ $500. 00
(3) Brother or sister of father or mother, etc._____ 250 00

(4)   Brother or sister of grandfather or grandmother,
          etc.   _____ 150  00
(5)   Any other relative or stranger in blood, etc._____  100  00

Applicable to the widow's $130,000 subject to this tax said section 7714 provides:

"The foregoing rates in section 7713 are for convenience termed the primary rates. Upon all in excess of five thousand dollars, in class one, the primary rate provided for herein shall be increased one one hundred twenty-fifth of one per centum for every one hundred dollars increase in valuation of such excess."

As one per cent. is the primary rate, and $125,000 is the widow's excess of $5,000 subject thereto, in construing this statute, the county judge increased this primary rate and applied it to each $100 unit in said excess, which produced from said sum a tax of $1,310 due the state. This was right. This would have been clearly so had the act provided, "Upon all in excess of $5,000.00, in class one, the rate provided for herein shall be increased (added to) one one hundred twenty-fifth of one per cent.," and stopped, which means the state's toll on the lump sum shall be one per cent. thereof plus one one hundred twenty-fifth of one per cent. or 1.008 per cent. So far, the sentence clearly expressed the dominant idea which must not be lost sight of and permitted to "dwindle into a squirrel's trail and run up a tree" by what follows in the same sentence, and which was intended to prescribe the detail. Having thus ascertained the rate, the tax is to be applied to what? To each $100 unit in $125,000, the total increase in valuation of the excess, or "for every $100 in increase in value of such excess." This increased rate was "for" every one of those units, which means for each and every one of them. And was "for" them in the same sense as when we say "a whip for the horse, a bridle for the ass, and a rod for the fool's back," which means, to be applied to. Thus the state told the tax gatherer, in effect, not to take the twentieth penny, as it seems the Romans did, but that "for" every $100 unit of this excess passing through his hands he should exact therefrom, not only the dollar, but a modicum besides, or 1.008 per cent. of that amount, and it seems that, should the last be not a full unit, he might say as to that *de minimus non curat lex,* but such is not the case here.

This is no novel use of the word "for," which seems to have occasioned so much confusion in the application of this sentence. In *Knowlton v. Moore,* 178 U. S. 41, 20 Sup. Ct. 747, 44 L. Ed. 969, the law under construction was similar to the one here. It taxed the legacy of $100,000 in question "at the rate of seventy-five cents for each and every $100 of the clear value of such interest in such property" to be multiplied as therein stated. The executors, construing the rate, returned it to the taxing power thus: "Rate for every $100, $2.25," which was so far held to be a correct construction of the word "for" that the same was not questioned. The syllabus in that case stated the contention of the executors to be: "(3) That a legacy of $100,000 taxed at the rate of $2.25 per $100, was only subject to the rate of $1.12½" —showing clearly that "for," as used in the sentence under construction, meant "to be applied to," and that $2.25 was to be deducted from every $100, and we shall likewise hold. We are therefore of opinion that the method of computation adopted throughout by the county judge was right, and for that reason the same is approved. This for the further reason that the method adopted by the district court, to quote again from Mr. Bancroft's book, would lead to something like this:

"Suppose a rich New York resident shows his appreciation of his best friend by naming him his executor, and leaves him, in addition, a handsome legacy of $2,000,000 worth of stock in an Oklahoma corporation. The executor is not familiar with the gyrations of inheritance tax laws, and, as he wishes to receive his dividends, he sends along the stock for transfer. Some one has borrowed our table of logarithms and our higher mathematics are a little rusty, but under this handicap we figure that $1,951,930 is a very close approximation to the Oklahoma tax on this legacy. The exhilarating feature of the situation is not that he has only $48,070 of the $2,000,000 left when Oklahoma is through, but is that a tax of $418,745 is still due on the legacy to the state of New York, and the executor is personally responsible for the payment of the entire amount."

The latter method of computation is rejected, pursuant to the well-known canon of construction stated in *Lau Ow Bew v. U. S.,* 144 U. S. 47, 12 Sup. Ct. 517, 36 L. Ed. 340, thus:

"Nothing is better settled than that statutes should receive a sensible construction, such as will effectuate the legislative intention, and, if possible, so as to avoid an unjust or an absurd conclusion. *Church of Holy Trinity v. United States,* 143 U. S. 457 [12 Sup. Ct. 511, 36 L. Ed. 226] ; *Henderson v. New York,* 92 U. S. 259 [23 L. Ed. 543] ; *United States v. Kirby,* 74 U. S. (7 Wall.) 482 [19 L. Ed. 278] ; *Oates v. First Nat. Bank of Montgomery,* 100 U. S. 239 [25 L. Ed. 580]."

And in view of the further rule, construing tax laws, that, where there is any ambiguity or doubt, it must be resolved in favor of the person upon whom it is sought to impose the burden (26 Am. & Eng. En. Law [2d Ed.] 669), or, as stated in 2 Lewis' Sutherland, Stat. Const. (2d Ed.) sec. 490:

"Statutes will be construed in the most beneficial way which their language will permit to prevent absurdity, hardship, or injustice, to favor public convenience, and to oppose all prejudice to public interest. 'In construing an act of the General Assembly, such a construction will be placed upon it as will tend to advance the beneficial purposes manifestly within the contemplation of the General Assembly at the. time of its passage ; and courts will hesitate to place such a construction upon its terms as will lead to manifestly absurd consequences, and impute to the General Assembly total ignorance of the subject with which it undertook to deal.' 2 Lewis' Sutherland, Stat. Const. (2d Ed.) sec. 490."

Neither is there merit in the contention that as article 10, sec. 19, of the Constitution provides, "Every act enacted by the Legislature * * * levying a tax, shall specify distinctly the purpose for which said tax is levied, and no tax levied and collected for one purpose shall ever be devoted to another purpose," and the act under construction provides that the tax when collected "shall be applied, (1) for the use of the public schools of the state, (2) for the expense of the State Government, and (3) for any other purpose which the Legislature may by law direct"— that said act is in conflict with said section of the Constitution, and that it does not specify distinctly the purpose for which the tax is levied. This, for the reason that said section of the Constitution is intended to apply only to annually recurring taxes imposed generally upon the entire property of the state, and not the kind of tax we are dealing with, which is a special tax. In *Brown, etc., Co. v. Commonwealth,* 125 Ky. 402, 101 S. W. 321,

the court had under construction a similar constitutional provision. In that case the commissioners in the revision of the laws relating to taxation understood the section (Constitution effective in 1891, sec. 180) as not to refer to taxes of this kind, and for years thereafter the Legislature in subsequent acts passed impliedly adopted the construction of the commissioners. This led the court to adopt that construction in that case, and that, too, apparently, without further authority in support thereof. In *Re McPherson*, 104 N. Y. 315, 10 N. E. 687, 58 Am. Rep. 502, the court held:

"Const. N. Y. art. 3, sec. 20, providing that every law which imposes, continues, or revives a tax shall distinctly state the tax, and the object to which it is to be applied, does not apply to Laws N. Y. 1885, c. 483, imposing a succession tax upon legacies to persons not related to the testator; but applies only to annually recurring taxes, and taxes imposed generally upon the entire property of the state, and not to special taxes upon special or limited kinds of property."

Speaking of the tax under consideration, the court in the body of the opinion said:

"It is always uncertain upon whom it will fall and how much revenue it will produce. It would have been impossible for the Legislature, perhaps years in advance, to specify the particular objects to which the tax should be applied, and we are of opinion that this section of the Constitution was intended to apply to the annual recurring taxes known at the time of the adoption of the Constitution, and imposed generally upon the entire property of the state."

It is next contended that as Comp. Laws 1909, reads:

"Sec. 7202. The ownership of a thing is the right of one or more persons to possess and use it to the exclusion of others. In this Code the thing of which there may be ownership is called property."

"Sec. 7203. There may be ownership of all inanimate things which are capable of appropriation, or of manual delivery; of all domestic animals; of all obligations; of such products of labor or skill, as the composition of an author, the good will of a business, trade marks and signs, and of rights created or granted by statute"

—the right of succession is thereby made property, and, as this tax is imposed on that right, it is a tax on property and hence the stat-

ute imposing it is contrary to article 10, sec. 6, of the Constitution, in that it seeks to subject to taxation that which was exempt before, stating wherein. It seems that this is claiming too much for this statute, the first section of which is intended to be and simply is a definition, and the second a general statement declaratory of the common law. Upon a claim so slender and without further authority to support it, we are unwilling to hold contrary to the great weight of authority that this tax was thereby converted from a tax on the transitus of property, as held in *Eyre v. Jacob,* 14 Grat. (Va.) 422, 73 Am. Dec. 367, into a tax on property, and hence subject to the operation of article 10, sec. 6, *supra.* We prefer to follow the holding in that case and to hold, as we do, that, being a tax on the transitus of property, or, to use the language of the statute, on the "transfer" of the property, the Legislature was in no manner controlled by said section in the imposition of a tax of this kind. For the same reason the constitutional provision requiring equality and uniformity of property taxation was not controlling upon the Legislature in the enactment of a statute such as this. *In re Fox,* 154 Mich. 5, 117 N. W. 558. Also, *Union Trust Co. et al. v. Durfee,* 125 Mich. 487, 84 N. W. 1101, citing *Strode v. Commonwealth,* 52 Pa. 182; *Scholey v. Rew,* 23 Wall. 352, 23 L. Ed. 99; *Mager v. Grima,* 8 How. 490, 12 L. Ed. 1168; *Tyson v. State,* 28 Md. 587; *Eyre v. Jacob,* 14 Grat. (Va.) 422 [73 Am. Dec. 367]; *U. S. v. Perkins,* 163 U. S. 629, 16 Sup. Ct. 1073, 41 L. Ed. 287; *State v. Alston,* 94 Tenn. 674, 30 S. W. 750, 28 L. R. A. 178; *State v. Hamlin* [86 Me. 495], 30 Atl. 76, 25 L. R. A. 632 [41 Am. St. Rep. 569]; *Maryland v. Dalrymple* [70 Md. 294], 17 Atl. 82, 3 L. R. A. 372; *Knowlton v. Moore* [178 U. S. 41], 20 Sup. Ct. 750, 44 L. Ed. 969; *Magoun v. Bank,* 170 U. S. 288, 18 Sup. Ct. 594, 42 L. Ed. 1073; *Walcott v. People,* 17 Mich. 68, 83; *Youngblood v. Sexton,* 32 Mich. 413 [20 Am. Rep. 654].

There is no merit in the contention that this law is unconstitutional on the ground that it was local and special, and changes the law of descent or succession, contrary to article 5, sec. 46, of the Constitution. This precise point was raised in *Re Magnes Estate,* 32 Colo. 527, 77 Pac. 853, where the court, sustaining

a similar provision of the Colorado Constitution (article 5, sec. 25), said:

"It is difficult to see wherein the imposition of a succession tax on property passing under the intestate laws changes the pre-existing law of descent. That law remains just as it was before. Property passes thereunder after just as it did before the tax was laid, and to precisely the same persons; and the laying of the tax merely casts upon its devolution to those persons a burden that was not borne before, but which at any time the state could impose in the form of a tax."

We are therefore of opinion that the construction of this act by the county judge was right, and that the tax should be figured as he did it and upon the basis indicated. Adopting as we do his theory of computation, the judgment of the district court is reversed and the cause remanded, with directions to proceed in accordance with this opinion.

WILLIAMS, KANE, and DUNN, JJ., concur. HAYES, J., dissents from that part of the opinion of the majority of the court which construes the statute fixing the rate of tax to be collected. Upon all other propositions considered and decided he concurs.