## BOARD OF COM'RS OF CRAIG COUNTY v. VENTERS.

No. 19268.    Opinion Filed Sept. 24, 1929.

Clay M. Roper, Co. Atty., and Edward H. Brady, Asst. Co. Atty., for plaintiff in error,

S. F. Parks, for defendant in error.

HALL, C. This was an action by Mabel Venters against the board of county commissioners of Craig county to recover on a school teacher's contract, which contract had been breached by the defendant through the county superintendent of said county. The cause terminated in favor of plaintiff upon a motion for judgment on the pleadings.

The petition of plaintiff alleged that in July, 1926, she entered into a teacher's contract with the county superintendent of schools of Craig county to teach separate school No. 59 in joint district No. 1, composed of portions of the counties of Craig and Mayes. The contract provided for a salary of $75 per month for a term of eight consecutive months in the school year of 1926-27, and beginning in the early part of September, 1926. A copy of the contract was attached to the petition and made a part of it.

It is alleged that said joint district No. 1, and separate school No. 59 were formed and established in 1913, and that said district still exists with boundaries unchanged; that Craig county has the largest territory in said joint district, and that the county superintendent of Craig county at all times exercised jurisdiction over said school; that Craig county, through its excise board, made an appropriation for the said fiscal year of 1926-27 for this separate school in said joint district, and had made such appropriations at all times since the year of 1913. Plaintiff taught two months and two weeks under this contract and was paid therefor by the defendant, the county of Craig, but was unable to complete said contract by reason of being discharged without her fault. She alleged her willingness and ability to carry out and perform her part of the contract.

The defendant filed an answer, admitting the allegations pertaining to the formation and existence of joint district No. 1, and admitted that the larger portion of said district is in Craig county; that the majority school was one for white children, and the separate school was one for colored children, and that the appropriation was made by Craig county to pay the teacher's salary, evidenced by the contract of the plaintiff; but denied that plaintiff's contract was valid for the reason that the school house in said separate school No. 59 was situated in Mayes county, and that all the pupils then attending said school were residents of Mayes county.

The above is substantially the statement of the case and the issue presented as set out by plaintiff in error in its brief.

It will be thus seen the question presented here is purely a legal one, which is: Does the statute authorize the creation and existence of a separate school co-extensive with a joint school district? In other words, does the same law apply to separate schools regarding their existence in joint school district as applies to the majority school, save and except the source of revenue therefor, and the manner of control by school officers? The trial court held that the plaintiff's contract was valid, therefore evidently reaching the conclusion that the school existed under authority of law. We think his action in holding that the contract was valid and that the separate school existed with the authority of law was correct.

Evidently the enactment of law permitting the creation of a joint school district is to serve some convenient or economic purpose. The separate schools of this state are as much a part of the school system as the majority schools. That must necessarily be the rule, because of section 3, art. 13, of the Constitution. The difference lies in the method of their supervision and control. The reasons for the express statutes regarding the management and control of the separate school no doubt grew out of the fact that the Legislature was seeking to retain our present form of official management of the public school system, and at the same time prevent the probable presence of both whites and blacks as school officers for the control and management of white schools, or schools attended by white children. The law was not designed to diminish the essential school advantages for black children; nor was it created to hazard unnecessarily the taxpayers by the creation and maintenance of unnecessary schools.

We see nothing whatever in the language of the statutes which would prevent the existence of a separate school in a lawfully constituted joint school district, with the territorial jurisdiction of such separate school co-extensive with the joint school district; and subject to the same means of supervision by the county superintendent, and method of operation as provided for in the law relating to joint school districts, except as the same are modified by the provisions of the statutes relating to the source of revenue for the establishment and operation and supervision and control of the separate schools. There is no reason to make a distinction between the means of financing such separate schools and the majority schools, save and except the source of the revenue. The statute (section 10574, Comp. Stat. 1921) expressly provides that the county is the unit for levying tax to support the separate schools. Regarding the majority school, the school district is the unit. Where the school district is a joint one, in order that a tax may be levied against the property in the district situated in the respective counties, it requires the affirmative action of the excise boards of the respective counties. In view of that procedure, we see no reason why the concurrent action of the excise boards of the counties in dealing with appropriations for joint school districts should be restricted to majority schools.

Regarding the separate school in question here, it seems that Craig county, the county having the majority of the territory comprising the joint school district, at all times had charge of this separate school, had made the appropriations therefor, and had paid for its operation. It seems that Mayes county, pursuant to the method generally followed to defray the expenses of joint school districts, had appropriated and paid

over a proportionate part of the funds necessarily expended in conducting said school.

We understand that a system similar to that observed in this case is in operation in several other places in this state. The interpretation of the law by administrative officers is by no means binding upon the courts, but when such interpretation and application of it has existed for a long period of time, and is reasonable and does not contravene some positive provisions of law or principle of public policy, such interpretation will be given weight in construing a statute, especially one somewhat meager in its nature.

The plaintiff in error stresses the point that the contract of plaintiff was void, for the reason that, at the time it was terminated summarily by the county superintendent, none of the pupils in said school actually resided in Craig county, and that the schoolhouse itself was located in the other county, to wit, Mayes county. We do not see where that could be a deciding factor in the case. The schoolhouse, being in a joint district composed of portions of two counties, necessarily had to be located in one county, unless it were placed directly upon the line. Such would be a useless requirement. Furthermore, this separate school being one for the black or colored children, and it being well known that the black race is rather itinerant or migratory, the following year might find all the blacks in Craig county, and that portion of the school district situated in Mayes county might not have any "color line" at all, save and except a lonesome schoolhouse.

The case is not presented to this court on the theory that the plaintiff might have minimized her damages by seeking, at a trifling expense, to secure similar employment at another place with conditions equally as favorable. As already stated, the question presented is the single legal question whether or not the contract is valid or absolutely void.

The writer fully appreciates the fact that the statutes (sections 10349-10350, Comp. Stat. 1921) relating to the creation of and existence of joint school districts are not as definite as they could be framed regarding their applicability to both the majority and separate schools. However, there is nothing in the statutes to negative such application.

Undoubtedly, the same law which applies to majority schools applies with equal force to separate schools, except in so far as that law is modified by express statutory enactment. We presume that the purpose of the Legislature in enacting the joint school district law was to create better schools for the amount of public funds expended, or to maintain schools equally as good upon less revenue. Therefore, in construing these statutes, upon the point at issue the general scheme of the entire school law must be looked to and considered.

Counsel for plaintiff in error rely upon section 10574 of the Statutes as supporting their contention. That section of the statute contains the general provision of law relating to "taxation for separate schools," just as section 9692 provides generally the method of taxation to support the majority schools. Neither section attempts to legislate specifically for schools situated in a joint school district.

As stated by this court in McGannon v. State, 33 Okla. 145, 124 Pac. 1063:

"Statutes will be construed in the most beneficial way which their language will permit to prevent absurdity, hardship or injustice, to favor public convenience and to oppose all prejudice to public interests."

Furthermore, in construing a statute, if possible such construction should be given it as will carry out the spirit as well as the letter of the terms of the Constitution. The conclusion reached herein fully conforms to section 3, art. 13, of the Constitution, which provides that:

"Separate schools for white and colored children with like accommodations shall be provided by the Legislature and impartially maintained."

For the reasons herein stated, the judgment of the trial court is hereby affirmed.

BENNETT, HERR, JEFFREY, and DIFFENDAFFER, Commissioners, concur.

By the Court: It is so ordered.