TEXAS- EMPIRE PIPE LINE CO. et al. v. TULSA COUNTY, EXCISE BOARD.

No. 30860. Oct. 20, 1942.

Rehearing Denied Dec. 8, 1942.

*131 P. 2d 745.*

Mastin Geschwind, of Oklahoma City, for plaintiffs in error.

Dixie Gilmer, County Atty., and William M. Taylor, Asst. County Atty., both of Tulsa, for defendant in error.

WELCH, C. J. The first item of protest involves an alleged excessive general fund levy for school district No. 3, Tulsa county.

The grounds are that the total valuation of taxable property in the district is greater than the total employed by the excise board in calculating the rate of levy.

Protestant arrives at the conclusion that the total taxable value exceeds the total value considered by the excise board because of the asserted fact that on August 14, 1941, certain portions of other school districts in another county became attached to district No. 3 and on a date before the levy was made. It urges that by virtue of 70 O. S. 1941 § 890.6 and Missouri-K.-T. Ry. Co. v. Cowden, 184 Okla. 260, 86 P. 2d 776, the taxable property within the annexed territory became immediately liable to the present levy, hence the previously assessed valuation of the attached territory should be added to the already assessed valuation of school district No. 3 for the purpose of this levy.

It asserts that the annexation became effective before the "tax levies" were spread upon the tax rolls by the county assessor. There are not disputed facts material to our view.

Whether such property previously assessed in the annexed territory became liable to the payment of the present tax cannot be properly determined in this character of case. Tax protest cases can go no further than an examination into questions concerning whether the governing boards of municipal subdivisions and the excise board have properly exercised or have exceeded their legal authority and duties in the matter of appropriations and levies.

The fact that certain specific property is legally liable to tax within a given taxing district does not necessarily govern the excise board in following its statutory duty in considering the assessed valuation of the district and in calculating the rate of levy. Let us notice the law with reference to the manner in which taxable property becomes assessed and upon whom rests the legal official duty of assessment, and how an official record of same is made.

As to taxable property other than railroad and public service corporations, 68 O. S. 1941 §§ 15.8, 15.12, 15.14, 15.16, and 15.22, provides that the assessment shall be made with and by the county assessor. An assessment of property for tax purposes not only includes the fixing of a valuation, but also includes establishment of its taxable situs. 68 O. S.

1941 § 15.6. 68 O. S. 1941 § 15.24 provides for the assessment of taxable property belonging to railroads and public service corporations by the State Board of Equalization.

68 O. S. 1941 § 15.52 provides that the county assessor shall annually prepare an "assessment roll." That section specifically provides in part as follows:

"Each county assessor in the state shall annually prepare an assessment roll which shall be in such form as may be prescribed by the Oklahoma Tax Commission, and shall contain the following:

"(a) A list of all lands in the county, . . .

"(b) A list of all town lots in each town or city . . . the number of the school district in which such lots are located. . . .

"(c) A list in alphabetical order of all persons and bodies corporate in whose names any personal property has been assessed, . . . (d) the value fixed by the assessor of all property, and additional columns to show the equalized value as fixed by the county and state boards of equalization.
. . .

"The assessment roll shall be correctly footed and balanced and the completed roll shall be delivered to the county board of equalization on or before the fourth Monday in April of each year in order that said board may correct, adjust and equalize the taxable value of the property of the county."

Section 15.54, same title, provides in part as follows:

"As soon as practicable after the assessment rolls are equalized . . . the county assessor shall make out an abstract thereof, containing the total amount of property listed under the various classifications appearing on the blank forms for the listing and assessment of property, and the total value of each class, which abstract shall be transmitted to the Oklahoma Tax Commission not later than the third Monday in June of each year."

68 O. S. 1941 § 15.37 provides in part as follows:

"The State Board of Equalization, after having assessed all property of railroad and public service corporations . . . shall cause the assessed valuation to be certified by the State Auditor to the county assessors of each county. . . . Such certificates of assessment shall show the various portions of the property of such corporations located and taxable in each county, and . . . school district . . . and shall include a full statement of all property of such corporations located in each of the said several subdivisions, together with the assessed value thereof. Said valuations shall be certified by the State Auditor to the assessors of the several counties wherein such property is located, on or before the third Monday of June of each year."

A further provision of section 15.54, supra, is quoted as follows:

"Within ten days after the county assessor of each county receives from the State Board of Equalization the certificates of assessment of all railroad and public service corporations and the equalized value of real and personal property of such county, it shall be the duty of said assessor to prepare and file with the county excise board an abstract of the assessed valuations of the county and each municipal subdivision thereof, and said abstract shall show separately the valuations of all personal property, real property, and public service corporation property in each municipality, and shall be properly totaled and balanced."

It is to be seen from the above provisions of statute that a detailed system of assessment is provided, designating the public officials upon whom rest the duties in regard thereto. Detail provision is made for correction and adjustment and for making a *formal record* thereof, and finally furnishing to the excise board an "abstract" thereof, showing " . . . separately the valuations of all personal property, real property, and public service corporation property in *each municipality,* and shall be *properly totaled* and balanced." The record of assessments so made becomes the "assessment roll" and is a formal official record.

68 O. S. 1941 § 286 provides for the filing of finanicial statements and estimate of needs by the governing boards of the several municipalities with the excise board. 68 O. S. 1941 § 289 provides for meeting of excise board as such, for the purpose of examining and adjusting same, etc.

68 O. S. 1941 § 297 provides in part as follows:

"When the excise board shall have ascertained the total assessed valuation of the property taxed ad valorem in the county and in each municipal subdivision thereof, and shall have computed the total of the several items of appropriation for general fund, sinking fund, and other legal purposes for the county and each municipal subdivision thereof, said board shall then proceed to compute the levy for each fund of each municipality. The procedure for the computation of such levies shall be as follows: . . ."

That section governs the method of calculating the several levies. Note that such provision refers only to " . . . the *total assessed* valuation of the property taxed ad valorem in the county and each municipal subdivision thereof. . . ." Nowhere is the excise board, sitting as such, given authority to assess property. Obviously, in ascertaining the "total assessed valuation" of any particular taxing unit it is confined to property which has been assessed in that taxing unit. Taxable property does not become so assessed except through and by the officials whose duty it is to assess. The excise board is not given specific or implied statutory authority to ignore or alter the assessment rolls as prepared through the official action of the proper officials.

The present record would indicate that the excise board employed the total assessed valuation as reflected by the assessment rolls in calculating the present rate of levy for this school district. There is no proof or suggestion to the contrary. It did not err in so doing.

If the property in the annexed territory is in fact taxable in school district No. 3, as contended, it may be that some action might have been taken to so adjust the assessment rolls. The controlling factor here is that there is no showing in this case that the assessment rolls contained a total assessed valuation greater than that employed by the excise board in calculating the present rate of levy.

Our discussion discloses the distinction between this case and the case of Missouri-K.-T. Ry. Co. v. Cowden, supra, upon which protestant places strong reliance.

That was a suit to recover taxes paid under protest. Essentially that case determined only that the property was liable for the tax. It is therefore not necessary that we here reconsider the rule of the Cowden Case. We perceive the logic in the thought that all property liable to taxation should be considered in computing a levy, but that desirable purpose is not always accomplished. The property owner's remedy is to apply to the officials whose duty it is to assess and prepare the assessment roll, or to the Legislature if the statutes permit no desired relief in that way.

In view of our conclusion we find no need to consider other questions presented. The judgment of the Court of Tax Review in denying this item of protest is affirmed.

The next item of protest involves the general fund of school district No. 7, Tulsa county. It is predicated upon the assertion that the estimated income to the district from transfer fees should have been calculated at a higher figure than was employed in calculating the rate of levy. It is specifically contended that a larger figure should have been applied in reference to transfer fee appropriations in another county for school districts in such other county, transferring pupils to said school district No. 7.

In this connection our attention is called to various provisions of 70 S. L. 1941, chap. 29, 70 O. S. 1941, chap. 29. It is asserted that thereby the Legis-

lature has provided by mandatory law a system of transfer of pupils from certain school districts to others, including detailed provisions for notices to the various districts concerning the pupils so transferred so that each district may know the number of pupils transferred to it and the district from which transferred, before it prepares its annual estimate of needs. The provisions of this chapter would seem to require the transferring district to make provision to pay the transfer fees to the transferee district.

68 O. S. 1941 § 268 provides that the several municipalities shall make " . . . an itemized statement of . . . probable income from sources other than ad valorem taxes. . . ."

Generally, in making such itemized statement of probable income from other sources, definitely stated amounts must be shown, for it is obvious that the excise board in its calculations must use a stated figure.

In cases involving estimated income to school districts from transfer fees, however, the Legislature has made the following special provision:

"After the county excise board has determined the amount that should be appropriated for transfer fees by a school district from which pupils have been transferred, the district to which any such pupil has been transferred may estimate not to exceed eighty per cent of the amount so appropriated, as probable income for appropriation, and it shall thereupon become the duty of the county excise board to use the amount so estimated to help finance appropriations of the district, to which such pupils are transferred." 70 O. S. 1941 § 1037.12.

Under those provisions it may be that a school district governing board would not have sufficient data from which it could properly calculate a stated amount at the time of preparation of its formal statement.

It is probable that by section 1037.12, supra, the Legislature intended to provide that the school district governing board might make its estimate of this probable income in terms of percentage (not to exceed 80%) of all amounts which the excise board might determine to appropriate in the budgets of other school districts reporting to it. In that manner the excise board might arrive at a stated amount from other data officially before it. The State Examiner and Inspector apparently has prepared the official forms to conform to that interpretation of that section, and we take it that the present estimate is sufficiently prepared in that respect.

In any event, the initiative is with the governing board as concerns the maximum estimate of such probable income. Breeding v. Oklahoma County Excise Board, 180 Okla. 379, 69 P. 2d 638. The governing board must indicate its estimate either in a stated amount or in some manner from which the excise board may arrive at a stated amount from some officiel information in its possession.

We do not think, however, that it was the legislative intent to require the excise board to furnish necessary information outside its own records to enable it to arrive at a stated amount of the governing board's estimate. As concerns this matter the governing board did not in its original statement set up an exact amount in its estimate. The excise board had before it no official data from which it might calculate same, as the districts from which the receipts here involved were expected, were situated in another county, and reported to and obtained their appropriations from the excise board of such other county.

It so happens in this case that the excise board of the other county had completed appropriations for the appropriating districts involved before the Tulsa county excise board acted on the levy under attack. We may assume that the governing board obtained information in that connection, and acting upon that information furnished additional data to supply the deficiency in its original estimate in that regard.

That information thus formed the additional link necessary to determine what amount in fact the governing board did estimate to receive from that source. That information, together with information supplied in the original estimate, became the governing board's estimate of receipts from that source. The excise board followed the governing board's estimate in that respect, and, although facts later developed show the estimate was probably too low, that will not sustain the protest here.

The judgment denying protest in that regard is affirmed.

The next item of protest involves a levy for rehabilitation of sinking fund of school district No. 26, Tulsa county. Protestant contends that no levy whatever could be made for such purpose during the fiscal year involved.

There is no dispute of the fact that the sinking fund does not equal the accrual liabilities. The governing board requested the levy as made.

Protestant takes the position that a deficit levy to produce $3,010.05 in the fiscal year 1944-45; the same for the fiscal years 1945-46 and 1946-47; $5,376.54 for fiscal year 1947-48, and $6,928.11 for fiscal year 1948-49, with no such levies prior to 1944-45, would satisfy the provision of the law and conform to this court's construction thereof in the case of LeFlore County Excise Board v. St. Louis & S. F. Ry. Co., 185 Okla. 440, 93 P. 2d 1087. Its interpretation of that decision as supporting the above stated contention is not justified when the opinion in that case is fully analyzed.

Protestant seems to take the position that a present levy is unauthorized because the funds produced are not actually needed for payment during the present fiscal year, not giving full force to the well-recognized statutory and constitutional provisions requiring an annual accumulation to pay the obligation when due. The statute clearly relates to deficits of accruals or accumulations and is obviously designed to allow a new start or program at any levy period, toward and in accomplishment of the original program, and there has been some failure therein. There are certain limitations contained in the proviso in that section not involved herein.

Protestant has failed to show wherein the Court of Tax Review erred, and its judgment denying that item of protest is affirmed.

OSBORN, BAYLESS, DAVISON, and ARNOLD, JJ., concur. HURST, J., concurs in part and dissents in part. CORN, V. C. J., and RILEY and GIBSON, JJ., dissent.

---

HURST, J. (concurring in part and dissenting in part). I concur in the majority opinion as to the result reached on the second and third items of protest, but dissent to the first paragraph of the syllabus and the result reached on the first item.

The statute under which the transfer was made (70 O. S. 1941 § 890.6) provides that "any school district or part of district annexed to another district under the provisions of this act shall, *upon and after becoming so annexed,* be a part of the school district to which annexed and shall be governed by all laws relating to such district" (italics mine) with a certain exception as to payment of bonded indebtedness not here material. I think this statute is plain and requires no construction. We are not concerned with its wisdom. Undoubtedly the school children residing in the annexed territory have a right to attend school in the annexing district from the day the annexing order becomes effective. It should follow that school taxes payable on the taxable property in the annexed territory should, where possible, go to the district that must carry the burden of their education. The Legislature intended this result by the quoted language. No doubt the Legislature intended that all interested parties and officers should take notice of the change and be bound to carry out the intent of the law by common-sense methods.

It probably did not think it wise to fix a time limit on making such change, or that it was necessary to provide a method of giving official notice of the change to the excise boards, the school district boards and the county assessors, but assumed they would know or be advised by the interested parties so as to correct the records and carry out the intent of the law. See Missouri-Kansas-Texas Ry. Co. v. Cowden, 184 Okla. 260, 86 P. 2d 776, and authorities there cited, construing a very similar statute.

The Legislature intended, by the quoted language, that the annexation become immediately effective for all purposes (for the purpose of determining the rate of levy and distributing school taxes as well as for purposes of administration) "upon and after becoming so annexed," and not at the commencement of the next fiscal year as held by the majority opinion. It follows that the excise board should have taken into consideration the taxable property in the attached territory, insofar as it could have been ascertained, in fixing the rate of levy for the annexing district.

GIBSON, J. (dissenting). I think the majority opinion's interpretation of this court's holding in Missouri-Kansas-Texas Ry. Co. v. Cowden, 184 Okla. 260, 86 P. 2d 776, is incorrect and too restricted, and that its attempt to distinguish the cited case from the case at bar is without force and unconvincing.

It was held, in effect, in the Cowden Case, supra, that where property was annexed to an independent school district after July 1st the situs of such attached property for purposes of taxation was changed forthwith to the independent district.

The correct rate of ad valorem tax levy is determined by dividing the amount of the estimated needs, not otherwise financed, of a municipal or political subdivision by the assessed value of the property, the taxable situs of which is in such subdivision. Under the rule of the Cowden Case the excise board of Tulsa county was required to take into consideration the value of all property in consolidated school district No. 3, when in the instant case it determined the rate of tax levy necessary to finance the needs of that school district for the year in question.

Although I agree with the conclusion of the majority opinion, I must dissent thereto, for I think it is contrary to the Cowden Case, supra, by which I feel bound, although I disagreed with it when it was adopted, and I now think it should be overruled. The adoption of the rule of that case has led to the confusion that is reflected in the record of the case at bar.

In my opinion the incorrect conclusion of the Cowden Case results from the fact that in its consideration of the statute there involved, section 6860, O. S. 1931, the court did not also consider the statutes relating to the listing and valuation of properties for tax purposes by the assessors of the counties and by the State Board of Equalization. 68 O. S. 1941 §§ 15.6 to 15.54. Therein are found comprehensive provisions for the listing, valuation, and assessment of properties. And it is apparent these statutes contemplate that on or before the third Monday of June of each year the State Board of Equalization shall certify to the county assessors the values of such railroads and public service corporations as may be located in their respective counties, and that within ten days thereafter each county assessor must file with the excise board of his county "an abstract of the assessed valuations of the county and each municipal subdivision thereof; and said abstract shall show separately the valuations of all personal property, real property and public service corporation property, in each municipality, and shall be properly totaled and balanced." It is obvious that it is contemplated the abstracts will be furnished to the county excise board on or before July 1st, the beginning of the tax year.

There is no statutory authority for changing these abstracts after they have

been delivered to the county excise board, as to either the situs or the value of any property therein contained.

In Prairie Oil & Gas Co. v. Cruce, Governor, 45 Okla. 774, 147 P. 152, this court, in considering the power of the State Board of Equalization to change its assessments after they had been completed and certified to the county clerks, said:

"The board, having completed its assessment and valuation of the property, and certified the same to the county clerks . . . could not during that year make an additional assessment and certify the additional amount to the county clerks. . . These various provisions of the law, in our opinion, contemplate some finality of action by the board at some time during the year, so that the result of their labors may be certified to the various county clerks, and so that the various municipal subdivisions of the state, through their proper officers, may make suitable provisions for revenue to meet their current expenses and obligations. If this were not so, the board at any time might reconvene and reconsider their action, and thereby disarrange the entire fiscal system of the state and all of its subdivisions. . . . The powers of the board with reference to assessing property, and its other duties in relation to the revenues of the state, are statutory, and no authority exists for any action to be taken by the board unless the same is expressly conferred or included by clear implication; and in case of doubt the rule of construction is that the doubt must be resolved against the existence of the power. McGannon v. State ex rel. Trapp et al., 33 Okla. 145, 124 P. 1063; Ann. Cas. 1914B, 620."

The rule is equally applicable to the county assessor and the abstract furnished by him to the county excise board.

Mid-Continent Pipe Line Co. et al. v. Okmulgee County Excise Board, 191 Okla. 572, 131 P. 2d 753, is a companion case to instant case. Therein the county attorney of Okmulgee county has attacked the constitutionality of Senate Bill No. 81 of the Eighteenth Legislature. The Okmulgee county territory was attached to the Tulsa county con-

solidated school district No. 3 pursuant to the provisions of that statute. The majority opinion does not consider the constitutional question. I think it should do so.