CITY OF NEW YORK v. SMITH, President of Village of Rockville Center, et al.

(Supreme Court, Appellate Division, Second Department. May 31, 1901.)

TAXATION—ASSESSMENT—AMENDMENT—TIME OF PREPARING ROLL.

    Laws 1897, c. 414, § 104, requires the assessors of villages of the third class to prepare an assessment list before the first Tuesday in May. Section 105 requires the assessors to meet to hear any objections to assessments on the first Tuesday in May, but allows an adjournment until the succeeding Saturday; and section 107 requires them to complete and file the assessment roll within four days thereafter. Section 106 requires the assessors to file a complete and verified assessment roll on or before the

second Tuesday in May. *Held,* that the act of the assessors in raising an assessment at an adjourned meeting held after the second Tuesday in May, and after the taxpayers had consented to the assessment, was invalid.

Appeal from special term, Kings county.

Certiorari by the city of New York against George W. Smith as president, and others as trustees and assessors, of the village of Rockville Center, to review the act of defendants in modifying a tax assessment. From a judgment in favor of plaintiff, defendants appeal. Affirmed.

Argued before GOODRICH, P. J., and WOODWARD, HIRSCHBERG, JENKS, and SEWELL, JJ.

Albert W. Seamen, for appellants.
William J. Carr, for respondent.

GOODRICH, P. J. It appears by the petition that the president and board of trustees, acting as assessors of the village of Rockville (a village of the third class), on April 24, 1900, duly published a notice that they would meet on Tuesday, May 8th, "for the purpose of completing the assessment roll, and of hearing and determining complaints in relation thereto, at the village clerk's office in said village, on Tuesday, May 8, 1900, during four consecutive hours, namely, from 6 o'clock in the afternoon to 10 o'clock in the afternoon." The board met at the time and place stated, and the assessment roll then contained the following assessment against the city:

| Acres. | Assessed Value. Real. |
|---|---|
| 45 | $2,800 |
| 15 | 900 |
| 44 | 17,700 |
| 7½ | 1,200 |
| 53 | 3,300 |

A representative of the city appeared and examined the roll, and asked for an adjournment of the hearing, so "that a further examination might be made as to the justness of the valuation placed upon the property" of the city. On May 10th the corporation counsel wrote the board that the city "makes no complaint as to any or either of said assessed valuations." Thereafter, and on the same day, the law department of the city received by telephone a communication from the board that it "had increased the assessed valuations upon the property" of the city, and on the 11th the department received a letter, dated May 10th, signed by the village clerk, stating that "in consequence of a vigorous protest against the low assessment of the property of the city of New York, as compared with that of the rest of the property of the village, they [the board] had changed the assessment on the property of said city of New York." The "vigorous protest" was that of a taxpayer of the village, made and presented on May 10th. Thereupon the board increased the several items in the aggregate to $86,500, the increase amounting to $60,600, and the number of acres in the last item of the assessment being changed from 53 to 80. The city made no further appearance, and now contends that the board was "without jurisdiction to make any changes,

\* ,\* \* no complaint having been made by your petitioner in regard to any or either of said valuations, as they appeared upon the assessment roll of said village, as the same was completed and filed in accordance with the provisions of the statute, and concerning which notice was given, so that corrections might be made therein upon application of persons aggrieved thereby." The return states that the board adjourned from May 8th to May 10th, in pursuance of the city's request, and that on the 10th they "proceeded to complete said assessment roll," and adjourned till May 12th, when they "finally completed said assessment, and signed and verified said assessment roll as required by law," and that the same was filed with the village clerk on the 14th. The city applied for and obtained a writ of certiorari to review and correct the action of the board and to vacate and cancel the assessment; and the court, on the return of the writ and after argument, referred to the case of People v. Forrest, 96 N. Y. 544, and decided that the "assessors, in increasing the valuation and acreage as set forth above, acted illegally and without jurisdiction." From the judgment on the decision the assessors appeal.

Our decision turns upon the time at which the assessors are compelled by the statute to complete and file the roll,—whether on the second Tuesday of May, or whether they may alter the roll at an adjourned meeting held on or before Saturday, the 12th. Section 104 of the village law (chapter 414, Laws 1897) provides that in villages of the third class the assessors "shall, on or before the first Tuesday of May [in 1900 this was May 1st] prepare an assessment-roll of the persons and property taxable within the village in the same manner and form as is required by law for the preparation of a town assessment-roll." Section 105, headed, "Meeting of Assessors to Hear Complaints," requires them, one week before the first Tuesday of May, to publish a notice that they will meet on that day "for the purpose of completing the assessment-roll, and of hearing and determining complaints in relation thereto, and they may adjourn such meeting from day to day, not later than the Saturday then next succeeding" (in 1900. This was the 5th). Section 106, headed, "Completion and Verification of Assessment-Roll," provides that "When the assessors, \* \* \* shall have completed the village assessment-roll," they shall verify it, and "the roll as so completed and verified shall be filed with the village clerk, on or before \* \* \* the second Tuesday in May." Section 107, headed, "Failure to Hold Meeting," provides that, "if the meeting for completing the village assessment-roll and hearing complaints in relation thereto is not held on" the appointed day, each of the assessors shall forfeit to the village ten dollars, and they shall fix another time and give notice thereof. "The assessors shall meet accordingly \* \* \* shall hear complaints, complete the assessment-roll, and file the same on or before" the fourth day thereafter. From this summary of the provisions of the statute, it seems evident that, except in cases where there has been a failure to hold the meeting, the assessors are required to complete, verify, and file the assessment roll on or before the second Tuesday in May. This is still further emphasized by section 108, which reads, "Upon completing and filing the annual assess-

ment-roll, * * * and on or before the second Tuesday in May,"
the assessors shall publish notice of filing and opportunity .for. in-
spection for 15 days; and section 109 provides for a review on certio-
rari within such 15 days.

In Clark v. Norton, 49 N. Y. 243, decided in 1872, the tax law then
in force (1 Rev. St., 5th Ed., p. 909) was under consideration. Section
8 reads:

"Between the first days of May and July, in each year, they shall proceed
to ascertain, by diligent inquiry, the names of all the taxable inhabitants in
their respective towns or wards, and also all the taxable property, real or
personal, within the same."

Subsequent sections provide substantially as is now provided for
the method of making up the assessment rolls, and what must be en-
tered thereon. "Sec. 17. (Sec. 19) 'The assessors shall complete the
assessment rolls on or before the first day of August, in every year,'"
etc.

The court said (page 247):

"The [town] assessment must be made by the 1st of July, and of property
and persons in respect to the liability as it exists on that day. The assess-
ment roll must be completed, and a fair copy made and deposited for exam-
ination by those interested, on or before the 1st day of August. An indi-
vidual not liable to taxation on the 1st day of July could not be placed upon the.
assessment roll after that time; neither could a person whose name was
properly on the assessment roll be assessed for property acquired by him
after that day. People v. Supervisors of Chenango Co., 11 N. Y. 563. * * *
To add names to the roll, after the deposit for examination, or to change
the character and amount of property for which individuals are assessed, is
to deprive the party affected of the benefit of the notice required by statute,
and the opportunity to apply for correction, which the legislature designed
all persons should have, and which the persons named in the original roll
have, in respect to property appearing on such original roll as assessed to
them. * * * The duty of the assessors had been fully performed when
the assessment roll was completed. except in the matter of a review of the
assessment as made and as permitted by statute."

In Overing v. Foote, 65 N. Y. 263, 270, it was said:

"The town assessors are therefore required 'between the first days of May
and July in each year * * * to proceed to ascertain, by diligent inquiry,
the names of all the taxable inhabitants in their respective towns or wards,
and, also, all the taxable property, real or personal, within the same.' 1
Rev. St. p. 390, § 8. And they are required to make an assessment roll, in
which names, amounts, and values are to be specially stated. The words of .
the statute are clear, and the decision of the courts of the highest authority
is that these duties prescribed by law must be strictly observed (Clark v.
Norton, 49 N. Y. 243), and that the assessment roll for the current year, con-
taining the names of the persons to be assessed, must be, in one sense, de-
termined upon by the assessors on or before the 1st day of July in each year.
It is very clear that they cannot extend the time for the performance of this
duty without assuming the functions of the legislature, any more than they
can enlarge their powers in other respects."

In People v. Forrest, supra, the court said (page 547):

"It has been decided, and is not now disputed, that after the completion of
the roll, and the formal notice of that completion, assessors are without juris-
diction to change either the persons or property assessed, or the adjudged
valuation of·the latter, except upon complaint of the party aggrieved."

Summarizing these statutes and decisions, it was the duty of the
assessors to complete their assessment roll on or before the second

Tuesday of May (the 8th), and after that date they had no power to alter the assessment upon the city's property. The record shows that the assessment as to the city's property which appeared on the assess-ment roll was not changed till the 10th of May, two days afterwards. It is claimed in the appellants' brief that the figures in the roll were only "preliminary figures," were in pencil only, and hence not final. No such fact appears in the petition or return, and, even if it did ap-pear, it would not alter the duty of the assessors to complete and file the roll on the second Tuesday of May. If a taxpayer, on examina-tion of the completed assessment roll, finds that he is not inequitably assessed, and is willing to accept the decision of the assessors therein expressed, he is entitled to assume that no change will be made, and to act accordingly.

It becomes unnecessary to consider the contention of the corpora-tion counsel, referred to in the opinion of Mr. Justice Gaynor, that an assessment cannot be complained of before the board by other tax-payers on the roll, and increased, as being too low; and we do not determine it. Judgment affirmed, with $10 costs and disbursements. All concur.