## PRAIRIE OIL & GAS CO. v. CRUCE, Governor, *et al.*

### No. 7024.   Opinion Filed March 9, 1915.

#### (147 Pac. 152.)

1.    **TAXATION—Taxing Officials—Time for Performing Duties—Directory Statute.** The various provisions of the statute (Rev. Laws 1910) and chapter 152, Sess. Laws 1911, relating to assessments, levies, extending on the tax rolls, etc., and prescribing the time in which these acts shall be performed, are for the benefit of the state, providing, an orderly system regulating the conduct of the taxing officials, and are, so far as they relate to the time within which such duties are to be performed, merely directory, and are not limitations upon the power of the taxing officials.

2.    **TAXATION—Assessment by State Board—Power to Reassess.** Where the state board of equalization has assessed property of all railroad and public service corporations, and has equalized the various county assessments and computed the amount of the state levy, and caused the same to be certified by the state auditor to the several county clerks, said state board is without jurisdiction or authority to reconvene and reassess said property, or any part thereof.

3.    **TAXATION—Assessment—Omitted Property.** If any property, real or personal, of any railroad or public service corporation, be omitted in the assessment of any year or years, and thereby escape taxation, when such omission is discovered the state board may assess such property and extend against the same on the tax list all arrearages of taxes properly charged against it in connection with the assessment for the next or some subsequent year.

4.    **TAXATION—State Board—Power to Reassess.** The Legislature may make provision by law for a reassessment of property of railroads and public service corporations which has been assessed at less than its fair value, but, in the absence of such provision by the Legislature, no authority exists in the state board to do so.

5.    **PROHIBITION—Grounds—Unlawful Assessment.** Where the state board has assessed the property of all railroads and public service corporations and has equalized county assessments, determined the amount of the state levy, and caused the state auditor to certify the same to the various county clerks, and taken a recess subject to the call of the Governor, and thereafter reconvenes and attempts to reassess any of the property previously

assessed, or to add to the assessment already made property which it is claimed had been omitted, prohibition will lie, and is the proper remedy to restran said board from so doing.

Brown, J., dissenting.

(Syllabus by the Court.

Original action for writ of prohibition by the Prairie Oil & Gas Company against Lee Cruce, Governor, and others, as the State Board of Equalization. Writ granted.

*W. S. Fitzpatrick; Ames, Chambers, Lowe & Richardson; N. A. Gibson and N. E. Van Tuyl, for plaintiff.*

*Charles West, Atty. Gen., and Ledbetter, Stuart & Bell and Stuart, Cruce & Cruce, for defendants.*

HARDY, J. This is an original proceeding against defendant's as a member of the state board of equalization, praying for a writ of prohibition, prohibiting defendants, as such board, from reassing property of plaintiff or adding to the assessment previously made the property which it is claimed was omitted. The material facts in plaintiff's petition, which are admitted by the answer, are: That plaintiff on the 30th day of March, 1914, filed with the state auditor a sworn statement of its property subject to taxation in this state, of the approximate value of $31,220,-665.33, and on the——————day of August the state board of equalization raised the valuation thereof to $35,329,904.70, and that thereafter, during the month of August, said board completed the assessment of plaintiff's property, and of all public service corporations in the state for said year, and completed the equalization of all other property in the state, and on September 3d levied a tax for the fiscal year of 1.3 mills; that on the 28th day of August the state auditor certified the assessment so made to the county assessors of the various counties in which taxable property of plaintiff was located, and thereafter said board took recess subject to the call of the Governor; that thereafter, on complaint of one

C. H. Pittman, as tax ferret, the board reconvened, and, after various proceedings, on December 10th increased the assessment of plaintiff's property in the sum of $10,500,000.

These facts are admitted by the answer, and defendants seek to justify their action by reason of the fact, as they allege, that the assessment in August of $35,000,000 was induced by fraud of plaintiff in concealing the fact that it had property of more than $10,500,000 invested in oil and gas leases, and that plaintiff concealed from the defendants the true value of its capital stock, surplus, and undivided profits, and allege that plaintiff's taxable property in the state is approximately the sum of $64,000,000. There is no reply to the answer, and for the purposes of this proceeding the material affirmative allegations thereof are to be taken as true.

There are presented to us for our consideration two questions: (1) If the allegations of plaintiff are true, and defendants were without jurisdiction in the premises, is prohibition the proper remedy? (2) Were defendants, as members of the state board of equalization, without jurisdiction to hear and determine matters considered at the time the proceedings in question were had?

The right of the plaintiff to the relief sought is denied by the defendants; and in support of their position they cite the court to section 7370, Rev. Laws 1910, which is as follows:

"The proceedings before the board of equalization and appeals therefrom shall be the sole method by which assessments or equalization shall be corrected or taxes abated. Equitable remedies shall be resorted to only where the aggrieved party has no taxable property within the tax district of which complaint is made."

Plaintiff contends that the action of the state board in the premises is not governed by this statute, because the board was not legally in session, and therefore clothed with no legal authority, and their acts a nullity. If this contention be true, section 7370

is not applicable, because that evidently has reference to proceedings when the board is legally in session, and the procedure there provided is for the correction of assessments so made. If the defendants were not lawfully in session as the board of equalization, their acts, so far as they affect the rights of plaintiff, would not be governed by this statute, although they may claim to have been acting as public officers in the exercise of some legal duty. The right to a writ of prohibition under these circumstances has been determined by this court in the recent case of *Osage & Okla. Co. v. Millard et al., ante,* 145 Pac. 797, where prohibition was granted restraining the defendant, as county treasurer, from listing for taxation, or extending on the tax rolls, the property of plaintiff in that case. See, also, *People ex rel. N. Y. Edison Co. v. Feitner et al.,* 45 Misc. Rep. 12, 90 N. Y. Supp. 826; *Layman v. Iowa Telephone Co.,* 123 Iowa, 591, 99 N. W. 205, and cases cited there; *Hutchinson et al. v. City of Omaha,* 52 Neb. 345, 72 N. W. 218; Cooley on Taxation, p. 1391.

The second question involves the consideration of the various statutes of this state for the assessment of the property of railroads and public service corporations. Section 21, art. 10, Const. (Williams' Ann. Const. sec. 286), creates the state board of equalization, and prescribes its duties as follows:

"The duty of said board shall be to adjust and equalize the valuation of real and personal property of the several counties in the state, and it shall perform such further duties as may be prescribed by law, and they shall assess all railroad and public service corporations property."

Section 7373, Rev. Laws 1910, prescribes additional duties for this board, as follows:

"It shall be the duty of said [state] board to examine the various county assessments and to equalize, correct and adjust the same as between the counties by increasing or decreasing the aggregate assessed value of the property or any class thereof, in

any or all of them, to conform to the fair cash value thereof, as herein defined, and to order and direct the assessment rolls of any county in this state to be so corrected as to adjust and equalize the valuation of the real and personal property of the several counties."

The manner of exercising the powers conferred upon said board by the constitutional provision above referred to is contained in article 4, c. 72, Rev. Laws 1910, secs. 7336-7349, inclusive. By section 7337 it is provided that the property of all public service corporations shall be assessed annually by the state board of equalization in the manner prescribed in said chapter. Section 7338 requires every public service corporation, on or before the last day of February of each year, to furnish sworn lists or schedules of its taxable property, as may be required by the state board of equalization, and makes such property subject to taxation for state, county, and other public purposes to the same extent as the real and personal property of private persons. Section 7348 provides that the returns so made shall not be conclusive as to the value or amount of said property, and authorizes the state board of equalization to make an assessment of such property at its fair cash valuation, estimated at the price it would bring at a fair voluntary sale, and gives the board power to examine the books, records, and papers and files of any corporation, to compel the attendance of witnesses and the production of books and papers so as to enable it to properly discharge its duties in these matters. Section 7349, is as follows:

"The state board of equalization, after having valued and assessed all the property of public service corporations in this state according to the provisions of this article, shall cause the same to be certified by the state auditor to the county clerks of each and every county in which any portion of the property of any such public service corporation may be located. Such returns shall show the various portions of the property of such corporation located and taxable in each county, and in every city, town, township, school district or other municipal subdivision thereof, and shall include a full and particular statement of all and every

species of property of such corporation located in each of the said several subdivisions, together with the assessed value of every item thereof. Said return shall be certified by the state auditor to the clerks of the several counties wherein such property is located on or before the first Monday of May of each year."

The constitutionality of this legislation was sustained in *Western Union Telegraph Co. v. Trapp,* 186 Fed. 114, 108 C. C. A. 226, and it was there held that said legislation had the effect of constituting the state board of equalization a board of assessors for the purpose of assessing the character of property over which they were given jurisdiction.

After the state board has assessed all of the property of public service corporations in the state, and caused the same to be certified by the state auditor to the county clerks, the said county clerks are required to do certain things which are prescribed by section 7350, as follows:

"The county clerk, as soon as he shall have received the certificate from the state auditor of the property of public service corporations and the valuation thereof assessed for taxation in his county, shall certify same to the proper officers of the different school districts, cities, towns and townships in his county in which any portion of the property of any such public service corporation is located, and the amount of such assessment shall be placed on the tax rolls for the benefit of the respective school districts, cities, towns, or townships, and he shall, at the proper time, place such assessment on the proper tax roll of his county, subject to the same levy for different purposes as is other property."

The various county assessors are required by section 12, c. 152, Sess. Laws 1911, p. 335, to make an abstract of his assessments to the state board, after the sitting of the county board of equalization, not later than Saturday preceding the third Monday in June, and the third Monday in June is fixed as the time of the meeting of the state board of equalization, which is required

by section 7373 to meet in session at the state capital, commencing on the third Monday in June of each year, and requiring it to examine the various county assessments, to equalize, correct, and adjust the same as between the counties. Section 7374 levies an annual *ad valorem* tax, and prescribes the duties of the board in connection therewith. After the board has discharged its duties under this section, and the same has been certified to the clerks in the several counties in this state, the county excise board is required by section 7380 to meet at the county seat on the last Saturday of July for the purpose of examining the various estimates and revising and correcting same and ascertaining the assessed valuation of the property in the county, and each municipal subdivision thereof, and making a levy of taxes required for public purposes and the levy so made by them must be certified to the county clerk, who shall extend the same upon the tax rolls.

The foregoing presents the general scheme of taxation in this state, whereby revenues of the state and of its various municipal subdivisions are levied and collected. The various provisions of the statute fix the time at which each of the several duties shall be performed by the different officers in the assessment of property and levy of taxes, but we do not think these provisions constitute a limitation upon the powers of the officials so as to render invalid any acts performed by them after the time so fixed. There is no doubt that these provisions were intended to put into force an orderly and systematic procedure governing the conduct of the various officers whose duties it is to see to the assessment of the property and the levy and collection of the revenues of the state; and it seems clear that these provisions are not mandatory, but are merely directory; and if a taxpayer has failed to perform his full duty as a citizen by disclosing all of his property subject to taxation, and this fact is discovered by the taxing officers before the time has expired in which property may lawfully be assessed, that such officers may proceed, after proper notice and opportunity to be herad,

to assess said property so that it may bear its just proportion of the burdens of the government. It is a matter of no material importance to a taxpayer whether his property is assessed within the particular times prescribed by law or thereafter. This construceion of the law is conceded to be correct by counsel for plaintiff in the petition for a rehearing and the oral argument in support thereof. *Wells v. Burbank,* 17 N. H. 393; *Anderson, etc., v. Mayfield,* 93 Ky. 230, 19 S. W. 598; *Buswell Respt., v. Board Sup. Alameda County et al.,* 116 Cal. 351, 48 Pac. 226; *People v. Eureka Lake & Yuba Canal Co. et al.,* 48 Cal. 143; *Atlantic & Pacific R. Co. v. Yavapai County,* 3 Ariz. 117, 21 Pac. 768; *Hart v. Plum,* 14 Cal. 149; *Barkley v. Dale,* 213 Ill. 614, 73 N. E. 325; *Willard v. Pike,* 59 Vt. 202, 9 Atl. 907.

It is further urged by plaintiff that after the said board had assessed the property of plaintiff and all other public service corporations, and had equalized the assessments of the various counties, and caused the state auditor to certify such action to the clerks of the several counties of the state wherein property was located, that the board had exhausted its jurisdiction, and was without authority to take any further action in the premises, and should be held in law to have adjourned and to be *functus officio.* We are of the opinion that, when said board had valued and assessed all the property of public service corporations in the state, and had caused the same to be certified by the state auditor to the county clerks, as required by section 7349, they were withou authority to reconvene and reconsider their action by reassessing property already assessed, or by adding thereto property which it was claimed had been omitted, except as we shall hereinafter point out. What we mean by this last statement may be illustrated thus: The board, having completed its assessment and valuation of the property, and certified the same to the county clerks, during the year 1914, could not during that year make an additional assessment and certify the additional amount to the county clerks in the same manner and with like effect

as the original assessment and certification was made. These various provisions of the law, in our opinion, contemplate some finality of action by the board at some time during the year, so that the result of their labors may be certified to the various county clerks, and so that the various municipal subdivisions of the state, through their proper officers, may make suitable provisions for revenue to meet their current expenses and obligations. If this were not so, the board at any time might reconvene and reconsider their action, and thereby disarrange the entire fiscal system of the state and all of its subdivisions; and if they could do this as to one corporation or as to one item of property, the same action could be taken with reference to every public service corporation and railroad company, and as often as the board in its judgment should determine the necessity therefor. The powers of the board with reference to assessing property, and its other duties in relation to the revenues of the state, are statutory, and no authority exists for any action to be taken by the board unless the same is expressly conferred or included by clear implication; and in case of doubt the rule of construction is that the doubt must be resolved against the existence of the power. *McGannon v. State ex rel, Trapp et al.,* 33 Okla. 145, 124 Pac. 1063, Ann. Cas. 1914B, 620.

Another reason why we think this must necessarily be so is that by section 7368, Rev. Laws 1910, provision is made for an appeal in matters of this kind, and it is provided that appeals from the state board may be taken to the Supreme Court within 60 days after the adjournment of said board, but not afterward. An appeal necessarily carries with it the idea of some finality to the act appealed from, and, if it be held that the action of the board is not final when the result is certified to the county clerks, and that the board retains jurisdiction in the premises until it shall finally adjourn at its pleasure, then no right of appeal would accrue from any assessment until the adjournment was, in fact, had; or, if it be held that an appeal must be taken within 60

days from the date the board took final action upon the particular matter appealed from, then we would have this condition presented, or an appeal in a matter which was still within the jurisdiction and under the control of the board, and, should they see fit to do so, the matter appealed from might be reconsidered and a different result arrived at, from which an additional appeal could be taken, and so on from every order they might make. This, in our judgment, would lead to intolerable confusion, and would put it within the power of persons and corporations seeking to dodge their taxes to suspend payment thereof by neglecting to appeal until payment was sought to be enforced; when, if it be held the board still had jurisdiction, they could give notice of appeal under the provisions of the sections above referred to, and suspend the payment of taxes.

We have made careful examination of the authorities cited in the brief of counsel for both parties, and have arrived at the conclusion above stated, that when the board has valued and assessed all of the property of public service corporations, and has discharged its other duties, and caused the same to be certified by the state auditor to the county clerks, that said board is without jurisdiction or authority to take any further action in the premises. Cooley on Taxation (2d Ed.) pp. 351, 352; *City of Hannibal ex rel. v. Bowman,* 98 Mo. App. 103, 71 S. W. 1122; *Auditor Gen. v. Sparrow,* 116 Mich. 574, 74 N. W. 881; *Auditor Gen. v. Sessions,* 100 Mich. 343, 58 N. W. 1014; *Ferton et al. v. Feller,* 33 Mich. 199; *Common Council v. Smith,* 99 Mich. 507, 58 N. W. 481; *Wells v. Smyth et al.,* 55 Pa. 159; *Lewis v. Bishop,* 19 Wash. 312, 53 Pac. 165; *Bialy v. Bay City,* 139 Mich. 495, 102 N. W. 1033; *Barkley v. Dale,* 213 Ill. 614, 73 N. E. 325; *Sullivan v. Peckham,* 16 R. I. 525, 17 Atl. 997; *Willard v. Pike,* 59 Vt. 202, 9 Atl. 907; *Downing v. Roberts,* 21 Vt. 441; *State v. Manhattan Silver Min. Co.,* 4 Nev. 318; *People v. Supervisors of Westchester,* 15 Barb. (N. Y.) 607; *Overing v. Foote,*

65 N. Y. 263; *City of N. Y. v. Smith et al.,* 61 App. Div. 407, 70 N. Y. Supp. 702; *People ex rel. v. Forrest,* 96 N. Y. 544.

The legislature may make provision by law for a reassessment of property which has already been assessed at less than its fair value, but, in the absence of such provision by the Legislature, no authority exists in the board to do so; and we find no provision in the laws of this state conferring any authority upon any of the officers of the state whose duty it is to assess property to reassess the same after it has once been assessed. *Anderson v. Ritterbusch,* 22 Okla. 761, 98 Pac. 1002. By section 7309, Rev. Laws 1910, authority is conferred upon the assessors to add property which has escaped taxation in previous years to the assessment for the current year; and this, we think, is sufficient warrant of authority for the state board to add to the tax rolls property which has been omitted and which has escaped taxation. Counsel for plaintiff admit this section authorizes action by the state board, and we think this construction is also sustained by the decision in *Western Union Telegraph Co. v. Trapp, supra.* This section does not authorize the revaluation of property which has already been assessed, but simply authorizes the assessment of property which has been omitted and thereby escaped taxation, and directs the assessor to assess the property and extend against the same on the tax rolls for the current year all arrearages of taxes properly accruing against it. The defendants urge that under this section they have authority, after having assessed property for a certain year and caused the state auditor to certify the same to the county clerks, that if they discover during that year property omitted, they may assess the same and cause the auditor to certify their action to the county clerks to be collected in addition to, and in connection with, the valuation already made. If we are correct in our first proposition—that when the state board has assessed and valued the property of all public service corporations and railroad companies, and the state auditor has certified the same to the various county clerks, they are

without further authority—then undoubtedly they would have no authority to act under this section until the time for making the assessments in the next or some subsequent year; at which time, and in connection with the assessment for that year, the omitted property may be added, and all arrearages accruing against said property extended against the same on the tax rolls. We think this is the correct construction to be given to this section; and if the action of the board in this case is sought to be justified as a reassessment of property already assessed, the same was without warrant or authority of law; and if it be an addition of property omitted, then they are without jurisdiction, because, having fully completed their labors, they have no power to further act until the assessment for the succeeding or some subsequent year is to be made, when, by virtue of section 7309, the property so omitted may be added.

We are of the opinion that the writ should issue as prayed for.

KANE, C. J., concurs. TURNER AND SHARP, JJ., concur in conclusion: BROWN, J., dissents.

TURNER, J. I concur in that part of the opinion which holds that after the board of equalization had assessed the property of petitioner, and had caused the same to be certified by the auditor to the clerks of each county pursuant to Rev. Laws 1910, secs. 7349, as he did, that the board thereby lost jurisdiction of the subject-matter until the time for the next annual assessment as required by section 7337. But I dissent from that part of the opinion which holds that section 7309 conferred any grant of power whatever to the board; said section, in my opinion, being applicable to the local assessor only.

I am authorized to say that SHARP, J., joins me in these views of the case.

BROWN, J. (dissenting). I cannot concur with by Asso-

ciates in the final conclusion reached in this case, though with many of the propositions announced therein I heartily agree.

First, I agree that under section 21, art. 10, of the Constitution, it is the imperative duty of the state board of equalization to assess for taxation all property belonging to public service corporations in this state subject to taxation.

Second, I agree that for the purpose of assessing property owned by public service corporations the state board of equalization is a board of assessors.

Third, I agree that section 7309, Rev. Laws 1910, which makes it the duty of tax assessors to cause to be placed on the tax rolls taxable property which has been omitted and escaped taxation, applies to and includes the state board of equalization, the same as local officers whose duty it is to assess property for taxation, and I believe the board has authority so to do, independent of said statute.

Fourth, I agree that the several statutes stating the time in which the officers who shall act are directory, and I am in hearty accord with the proposition so well stated in the opinion of the court and in language which can scarcely be improved on, as follows:

"The various provisions of the statute fix the time at which each of the several duties shall be eprformed by the different officers in the assessment of property and levy of taxes, but we do not think these provisions constitute a limitation upon the power of the officials so as to render invalid any acts performed by them after the time so fixed. There is no doubt that these provisions were intended to put into force an orderly and systematic procedure governing the conduct of the various officers whose duties it is to see to the assessment of the property and the levy and collection of the revenues of the state, and it seems clear that these provisions are not mandatory, but are merely directory; and if a taxpayer has failed to perform his full duty as a citizen

by disclosing all this property subject to taxation, and this fact is discovered by the taxing officers before the time has expired in which property may be lawfully assessed, and that such officers may proceed after proper notice and opportunity to be heard, to assess said property so that it may bear its just proportion of the burdens of the government. It is a matter of no material importance whether his property is assessed within the particular times prescribed by law or thereafter."

I think the following proposition announced by the court is not applicable to the facts in this case as disclosed by the record, viz.:

"We are of the opinion that, when said state board of equalization had valued and assessed all property of public service corporations in the state, and caused the same to be certified by the state auditor to the county clerks as required by section 7309, that they were without authority to reconvene and reconsider their action by reassessing property already assessed, or by adding thereto property which it was claimed had been omitted except as we shall hereinafter point out. What we mean by this last statement may be illustrated thus: The board, having completed its assessment and valuation of the property, and certified the same to the county clerks, during the year 1914, could not during that year make an additional assessment and certify the additional amount to the county clerks in the same manner and with like effect as the original assessment and certification was made."

The proposition just quoted is based upon conditions and a state of facts different from those upon which the state board of equalization acted in the instant case. The language of the court is:

"That when said board had valued and assessed all property of public service corporations in the state, and had caused the same to be certified by the state auditor to the county clerks," and so forth.

In another portion of the court's opinion, referring to the answer of the defendants, the court say:

"There is no reply to the answer, and for the purposes of this proceeding the material averments and allegations thereof are to be taken as true."

In this the court is, of course, correct. Thus, considering the allegations in defendants' answer as true, we have this character of case: The extent and value of property owned by plaintiff and subject to taxation in Oklahoma, for the year 1914, was peculiarly within the knowledge of plaintiff's officers, and was not known to the state board of equalization, and that, in making and returning to the state auditor, the sworn list and schedule required by statute of property owned by the plaintiff corporation, together with a statement of the value thereof, plaintiff fraudulently omitted to include in such lists certain oil and gas leases of the approximate value of $10,500,000, and fraudulently stated the value of the property actually listed to be several million dollars less than its actual value, and that the board in August, 1914, was induced, by such fraudulent omission and false statement of values, to assess the property of plaintiff so returned at $35,000,-000, which sum was more than $10,500,000 less than the taxble value thereof; that thereafter said assessment was certified to the county clerks as required by law, and the board did not adjourn, but took a recess, subject to be reconvened upon call by the Governor; that later, about September of the same year, the board was informed of the omission by plaintiff to list and return its property, the oils and gas leases, as well as other property alleged to belong to it, and that said property was not included in the August assessment, and also that plaintiff had concealed the real value of its property rendered, and that, as a result thereof, the August assessment of said property at $35,000,000 was greatly less than the taxable value thereof, and that therefore, after due notice to plaintiff, the board, over plaintiff's objections, proceeded to hear and take evidence upon the questions stated, and that the evidence so taken showed plaintiffs had, in fact, failed and omitted to include in its property lists, oil and gas leases, and

other property belonging to it, and subject to taxation in the state of Oklahoma, for the year 1914, and the taxable value of such omitted property for said year was at least $10,500,000, and was not included in the board's previous assessment, and that such evidence further showed $35,000,000, the board's August assessment of plaintiff's listed property, was more than $10,500,000 less than the then taxable value of said property; that after hearing said evidence the board agreed to assess plaintiff for $10,500,000, in addition to its August assessment, and to add said additional sum to its previous assessment of $35,000,000, as the tax due and owing by plaintiff for the year 1914, and plaintiff brought this action to prohibit the board from doing the acts above stated. This court, as then composed, on the 5th day of January, 1915, in a decision by Justice Riddle, and concurred in by all the Justices (the present Chief Justice not sitting) denied plaintiff's petition for the writ of prohibition. Now, I submit, if the above facts stated in the answer are to be taken as true, and they must, then the state board had not assessed all the property of plaintiff subject to taxation at its meeting the ———— day of August, 1914.

But in this case, if we concede the board of equalization, when it assessed plaintiff's property at $35,000,000 in August, 1914, understood, as it evidently did, it was assessing all the property owned by plaintiff and subject to taxation in the state of Oklahoma, and intended such assessment as final, and that the action of the state auditor in certifying this assessment down to the county clerks was without objection on the part of the board, and that thereafter, when the board took recess subject to the call of the Governor, it did not have in mind any further proceedings in connection with plaintiff's property, even then, in my judgment, it was not precluded, under the allegations in the answer in this case, from further consideration of the matter of its assessment of plaintiff's property. To illustrate: Property owned by public service corporations is peculiarly within the knowledge of its

officers and servants. The law requires, on or before the last day of February of each year, they shall make and file with the state auditor sworn lists and schedules truly stating the property owned by them and the cash value thereof. The purpose of the statute in requiring these lists is to enable or at least aid the state board of equalization in arriving at a correct valuation and assessment of all property owned by the corporation. Every person is presumed to swear truthfully, and the board of equalization would be justified in assuming that the sworn lists and schedules returned contained a full and complete list of its taxable property, and that the valuation therein stated was, in truth, the cash value of such property. It is conceded the board may act at any time, within its discretion, in assessing corporation property. Then let us suppose that in March, immediately after the corporation has returned and filed its lists and schedules as required by law, the board of equalization, upon examination of these returns, rely upon the sworn statements that they contain a list of all property owned by the corporation subject to taxation in the state, and that the sworn value therein stated is correct, and, so relying, proceed to assess plaintiff's property stated in such returns, at the value therein stated, that the assessment is accordingly certified by the state auditor to the different county clerks, as required by law, and within the next ten days the board should learn the corporation and its officers had knowingly and intentionally omitted from the lists a certain class of its property subject to taxation, and had knowingly, and intentionally misstated the value of the property returned, then, if the court's holding in this case is correct, the board would nevertheless be precluded from a reconsideration of its assessment, and precluded from adding to the original amount already assessed against the corporation the value of the property which had been omitted from the returns and not assessed at all, and thereby the corporation, as a result of its success in perpetrating a fraud upon the board and concealing from it taxable property and values, escape the

payment of taxes for the current year upon the property and values omitted, though the same equaled or exceeded the value of the property actually returned and assessed, and though, as in this, the omitted property aggregated millions of dollars of taxable property and thousands of dollars of taxes which the corporation would be required to pay but for the fraud successfully perpetrated.

Another illustration: Suppose a corporation returns a correct statement and list of all property owned by it subject to taxation, but knowingly, with a fraudulent intent to deceive the board and escape payment of taxes, swore the cash value of the property returned was $31,000,000 (approximately the value placed by the corporation upon the property returned by it in this case), when, in fact, it knew the cash value of such property was over $60,000,000 (as some of the evidence tended to show was the cash value of the property returned by plaintiff in this case), and the board, relying upon the sworn valuation stated in the corporation's return, adopted the same and assessed the property thereat, and caused their assessment to be certified by the state auditor to the county clerks, and thereafter the board took a recess or adjourned, with no expectation of further consideration of the corporation's taxes, and afterwards, during the same year, and possibly the same month, the fraud is brought to the knowledge of the board, and it is discovered the corporation is assessed for even less than half the correct value of its property, then, notwithstanding this fact, under the court's holding, the board would be forever precluded, under existing laws, from reassessing the corporation's property, and from adding to the already assessed value a sum equal to the difference between the already assessed value and the actual taxable value at which it should have been assessed in the first instance, and the corporation would, as a reward for the successful perpetration of the fraud and deceit practiced by it upon the board, permanently escape

payment of one-half the taxes which in justice it should pay; for the court says:

"The Legislature may make provision by law for a reassessment of property which has already been assessed at less than its fair value, but, in the absence of such provision by the Legislature, no authority exists in the board to do so, and we find no provision in the laws of this seate, conferring any authority upon any of the officers of the state whose duty it is to assess property to reassess the same after it has once been assessed."

In my judgment, the law as it existed in 1914, and as it exists to-day, was and is sufficient to confer upon the board of equalization power to assess all property of whatsoever kind, of public service corporations, owned by them in this state, subject to taxation, and at its full taxable value, whether the same is correctly stated in the schedules returned by the corporation or thereafter discovered by the board of equalization, and that where the board, by fraud, accident, or mistake, fails to properly tax such property, it may return at any time the mistake is discovered and make a correct assessment.

In the case of *Anderson v. Ritterbusch, Treasurer,* 22 Okla. 761, 98 Pac. 1002, this court held, quoting from paragraphs 10 and 11 of the syllabus, as follows:

"The 'taxing power,' when acting within its legitimate sphere, is one which knows no stopping place until it has accomplished the purpose for which it exists, viz., the actual enforcement and collection from every lawful object of taxation of its proportionate share of the public burdens; and, if prevented by any obstacles, it may return again and again until, the way being clear, the tax is collected.

"In laws for the assessment and collection of taxes due on omitted property, it is uniformity of burden, and not identity of method of enforcement, which is required by constitutional principles."

The duty imposed upon the board by the Constitution is

mandatory—that of assessing all public service corporations in the state. The Constitution prescribes no bounds; it does not state when the board's work shall commence or be completed. Any statute which would so hamper or obstruct the board in the discharge of this duty so as to prevent the complete consummation and accomplishment thereof would be unconstitutional. The statutes do not prescribe any time within which the board is bound to act, or which estops them from acting at any time in the discharge of the duty imposed upon them. But the effect of the court's holding is that, the board having met, and by mistake has assessed the corporation's property at less than its valuation, has thereby estopped itself from a full and complete discharge of the duties imposed upon it by the Constitution and statutes of the state. The board is a continuing one, and with a mandatory duty of assessing all property of public service corporations at its fair cash value, and, in my opinion, it cannot by its own act excuse itself from a full discharge of such duty. It must perform the duty of assessing public service corporations, and, if necessary, it is entitled to the full term of its office in which so to do, and, as before stated, where, by fraud, accident, or mistake, it had been prevented or has failed to discharge its full duty, it may at any time during its term of office, upon discovery thereof, proceed to the full performance and discharge of such duty, and it is its duty to do so.

The court in its opinion appears to construe the action of the board in December, 1914, as a reassessment of plaintiff's property already assessed in August, and holding that property once assessed cannot be reassessed by the board, and that the writ of prohibition will lie to prohibit the board from adding to the amount of its August assessment the $10,500,000, the sum found at the December meeting to be the value of the corporation's property which was not previously considered by the board nor assessed by it. But I do not understand the action of the board in December to be a reassessment of the property value con-

sidered and assessed in August. The defendants' answer affirmatively alleges the facts hereinbefore stated. It is further alleged that defendants deny that the statement returned by plaintiff contains all of the property in the state of Oklahoma subject to taxation. It is further alleged:

"That these defendants deny that said assessment was made with full knowledge by the board of the character, quality, and use of the property of the plaintiff, and affirm that at that time, and on the 1st day of March, 1914, and on the 1st day of January, 1914, and on the 1st day of February, 1914, plaintiff had other additional property in very large amounts not known to these defendants, and which they did not know of on said ———— day of August, 1914, when they made the assessment last named"

Again, after admitting in August, 1914, the board attempted to complete its assessment of the property of plaintiff and of all other public corporations for that particular year, it is affirmatively alleged, at the bottom of page 2 and top of page 3 of said answer:

"But that, in fact, these defendants failed in said attempt, to the extent at least as has appeared at this time, that they failed to properly assess the property of the Prairie Oil & Gas Company, this plaintiff, and several other public service corporations similarly situated and of other corporations dissimilarly situated."

It is further alleged on page 3 of the answer, in substance, that after the August assessment of the property returned by plaintiff the board believing it had fully assessed all public service corporation property, levied an *ad valorem* tax of 1.3 mills for such fiscal year on the property of plaintiff, and that said assessment and levy was certified by the state auditor down to the proper officers, and that thereafter, in September, the board took a recess subject to the call of the Governor, and that on the ———— day of November, 1914, one C. H. Pitman represented

to the individual members of the board of equalization that certain property belonging to plaintiff had been omitted and not assessed by the board for the fiscal year of 1914, and that the property, which was assessed was assessed insufficiently; that on or about the 30th day of November, the board was reconvened by the Governor, and, after due notice to plaintiff, proceeded, over plaintiff's objection, to hear evidence offered by both plaintiff and Pitman for and against said allegation of omitted property and insufficient assessment. It is further alleged, in substance, that the evidence before the board at such December meeting showed such property was of the value of at least $10,500,000, and that the same had been omitted and not assessed by the board because of the fraudulent concealment thereof by plaintiff, and that after hearing the evidence the board, upon motion and second, agreed to add said sum of $10,500,000 to its previous assessment of plaintiff's property. These affirmative allegations in defendants' answer, if true, and, being undenied, are to be taken as true, show very plainly, to my mind, that the December action of the board does not amount to a reassessment of the property assessed by it in August, but was an assessment of other property belonging to plaintiff which was not before the board, and was not considered or assessed by it at its August meeting.

It is admitted in the opinion of the court that, under section 7309, Rev. Laws 1910, the state board of equalization have authority to assess property belonging to public service corporations which has been omitted and not previously assessed for taxes, but the court holds the board could not do so until the following year. I am at a loss, however, to understand how, under this statute referred to, it can be contended the board must wait until a subsequent year in which to render and assess omitted property authorized to be assessed by them. Notice the language of said section 7309:

"If any real or personal property be omitted in the assessment

of any year or years, and the property thereby escape taxation, when such omission is discovered the assessor shall enter such property on the assessment and tax books for the year or years omitted and he shall assess the property, and extend against the same on the tax list for the current year, all arrearage of taxes properly accruing against it, including therein, in the case of personal property taxes, interest thereon at the rate of six per cent. per annum from the time such taxes would have become delinquent, and when the omission was caused by the failure of the owner to list the same."

The statute is plain and unambiguous, and by its provisions and terms it becomes the duty of the assessing officer, as soon as he discovers property authorized to be assessed by him has been omitted and not assessed for taxes either for previous years or for the year in which the discovery is made, to then and there enter said property on the tax rolls and assess it and extend the taxes on the tax list for the current year. To wait until the following year, as held by the court he must do, to enter said property on the tax rolls or to assess the same, would, I think, be in violation of the plain and express terms of the statute. There is also splendid reason for requiring the taxing officer to proceed with the assessment as soon as he discovers the omitted property: First, the personnel of the taxing officers, which in this case was the board of equalization, may sustain a complete change before another year, as has been done in the present case at the recent election, and their successors, not having heard the evidence establishing the omission and nonassessment, could not proceed as provided by this section of the statute without again going to the trouble and expense of taking evidence, much or all of which may not be obtainable; and, second, before the following year the unassessed and untaxed property may have been removed beyond the limits of the state and the owner thereof become insolvent; or, third, the property may have been purchased by another without notice of the nonassessment for taxation thereof. If the law regulating the assessment of taxes in this

state is as construed by the court in its opinion, then there is a very serious discrimination between the ordinary taxpayer and public service corporations and in favor of the latter. The property of the ordinary taxpayer is assessed according to article or items. If he has ten head of horses, and lists only five for assessment, the omission is easily discovered, and the omitted five head may be readily included in the new assessment. But public service corporations are assessed according to a unit valuation, and, under the rule adopted by the court in this case, if the board, either by fraud, mistake, or accident, assesses the corporation's property at one-half its valuation, it is precluding from correcting its mistake, and the corporation, instead of bearing its portion of the burden of taxation, pays only one-half of the taxes it should pay, and the amount of the taxes so lost to the state and the various municipalities in which the corporation has property must be paid and contributed by the ordinary and common taxpayer.

In this case I think it is clearly shown the action of the board at its December meeting simply amounted to an assessment by them of property theretofore omitted and not assessed, of the aggregate value of $10,500,000, and that the board's action was fully authorized by section 7309. It may be, and I think it is a fact, that instead of adding said amount to the original assessment theretofore made by the board, it should have entered and extended the same as an independent assessment against plaintiff in said sum, but, if it was authorized to make the assessment, the fact that it is wrongfully added to the previous assessment was a mere irregularity, and could be taken advantage of by appeal only.

It would seem the court in this case has overlooked the old and familiar maxims, almost elementary, that "one cannot take advantage of his own wrong," and that "he who comes into a court of equity must come with clean hands."

The plaintiff appears before us in the attitude of admitting as true the allegations of fraud and deceit in the answer of defendants, and at the same time seeking affirmative equitable relief to stay the correcting hand of the board of equalization seeking to right the alleged wrong perpetrated upon it.

I am clearly of the opinion that the former decision of this court, denying the writ of prohibition was correct, and that petition of plaintiff for rehearing should be refused, and that the decision of my Brethren herein granting plaintiff a rehearing and allowing a writ of prohibition prayed for is fundamentally wrong.

In view of the pronounced interpretation by a majority of the court of the existing laws of this state relating to the assessment and collection of taxes on the property of public service corporations, it is of vital importance to the common and ordinary taxpayer in the state that the Legislature, now in session, hasten to enact laws by which all classes of taxpayers be required to contribute their share and portion of the burden of taxation.