COUNTIES — ASSESSMENT VALUE
The provisions of 68 O.S. 2459 [68-2459] (1971), which extend the term of session for the Boards of Equalization beyond July 1, to the third Monday in September in counties with an assessed valuation in excess of $500,000,000 are constitutional. In those counties having an assessed valuation in excess of $500,000,000, the County Assessor may increase the assessment value of real property until the real property portion of the assessment roll is delivered to the County Board of Equalization as provided by 68 O.S. 2471 [68-2471] (1971). Likewise, the County Assessor may increase the assessment value of personal property until that portion of the assessment roll is delivered to the County Board of Equalization pursuant to the same statutory provision. Thereafter, the County Board of Equalization will have the exclusive authority to adjust the assessment roll. It is therefore possible that a taxpayer could receive more than one notice of an increase in assessment value within the same year. The County Board of Equalization's authority to raise the assessed value on an item of property until an abstract of the assessment roll is delivered to the Tax Commission as provided by 68 O.S. 2473 [68-2473] (1971), is subject to one limitation. Once the taxpayer has appeared before the Board pursuant to 68 O.S. 2460 [68-2460] (1971), and the Board has made a decision as to the assessment value of the property in question, neither the Board nor the County Assessor can at a later date increase the assessment value. The Attorney General is in receipt of your recent letter wherein you ask the following questions: 1. Are the provisions of Title 68 O.S. 2459 [68-2459], which extend the term of session for the Boards of Equalization beyond July 1, to the third Monday in September and under which Boards of Equalization are reducing the assessed value of property during this period July 1, to the third Monday in September, constitutional? 2. If the County Assessor gives due notice of an increase in assessed value of property to which the property owner finds no objection, and consequently does not protest such increase, can the County Assessor at a later date in the same year and on the same property again raise the assessed value and send another notice of increase in assessed value? 3. What date is the latest date during the year on which the the County Assessor may change the assessed valuation on the same property? In order to properly answer your questions, it will be necessary to epitomize the ad valorem assessment procedure as that procedure is set forth in Title 68 of the Oklahoma Statutes. Beginning on the first of January each year, or as soon thereafter as practical, the County Assessor must begin preparing an assessment roll, containing therein those elements prescribed by the provisions of 68 O.S. 2471 [68-2471] (1971). Among other things, this assessment roll will contain a list of all real property within the county, and a list of all persons in whose names any personal property has been assessed, together with a value fixed by the County Assessor for the property included. Section 2471 further provides that in counties having an assessed valuation in excess of $500,000,000, the real estate portion of the assessment roll shall be delivered to the County Board of Equalization on or before the fourth Monday in January. The County Board of Equalization takes the assessment roll provided by the County Assessor and makes any corrections and adjustments in the assessment value which the Board deems necessary. Title 68 O.S. 2459 [68-2459] (1971) sets forth the duties and authority of the County Boards of Equalization. That section states in part as follows: ". . . It shall be the duty of said boards, and they shall have the authority, (a) to equalize, correct and adjust the assessed valuation of real and personal property, by raising or lowering the valuation of the property, real or personal, of any taxpayer, to conform to the fair cash value thereof, as defined by law; . . ." Section 68 O.S. 2459 [68-2459] further provides that in counties having an assessed valuation in excess of $500,000,000, the Boards of Equalization shall commence on the fourth Monday in January and end not later than the third Monday in September. Pursuant to 68 O.S. 2473 [68-2473] (1971) the County Assessor must receive from the Board of Equalization the assessment roll, corrected and adjusted by said Board through the first Monday in June, make out an abstract thereof, and transmit said abstract to the Tax Commission not later than the third Monday in June. The Tax Commission, in compliance with 68 O.S. 2462 [68-2462] (1971), must then render its findings as to the adjustment and equalization of the property contained in the abstract. Within five days after receipt of the abstracts from the County Assessors, the Tax Commission must lay the abstracts, as modified by the Commission findings, before the State Board of Equalization. After the State Board of Equalization has made adjustments in the valuation of real and personal property within the several counties and performed the other duties required by the provisions of 21, Article X, Section 21 Oklahoma Constitution, and 68 O.S. 2463 [68-2463] (1971), the Board will send a certified assessment value of all railroad and public service corporations and all real and personal property within the county to the County Assessor of each county. Pursuant to 68 O.S. 2473 [68-2473](c) (1971), the County Assessor has ten (10) days in which to prepare an abstract containing the certified value of all property within the county and file said abstract with the County Excise Board. At this point, the ad valorem assessment procedure has ended. The tax rolls are then made from the certified assessment rolls. These provisions were intended to put into force an orderly and systematic procedure governing the conduct of the various officers whose duty it is to administer the collection of taxes. This intended purpose should be kept in mind when any individual provision is construed. In analyzing the assessment procedure, it is important to remember that a county may not prepare its tax roll until it has received a certified assessment value for all the personal and real property within the county from the State Board of Equalization. That certification is an absolute necessity. In order to obtain a certificate of assessment from the State Board of Equalization, the statutes provide that the County Assessor must prepare an abstract of the work product of the County Board of Equalization through the first Monday in June, and deliver the same to the Tax Commission before the third Monday in June. (See 68 O.S. 2473 [68-2473] (1971)). There are no provisions for an alternate procedure whereby the County Boards of Equalization could on a date subsequent to the third Monday in June deliver an amended abstract of readjusted assessment valuation to the Tax Commission for the eventual certification by the State Board of Equalization. To allow such a procedure would completely defeat the purpose of the State Board of Equalization and defeat the entire assessment system. Without the requirements that the counties have their assessed value in on a date certain, the State Board could never accurately equalize the assessed value of property throughout the State. In the case of Prairie Oil and Gas Company v. Cruce,147 P. 152 (1915), the Oklahoma Supreme Court was dealing with an ad valorem assessment procedure almost identical to our present system. The Court stated in part as follows: ". . . These various provisions of the law, in our opinion, contemplate some finality of action by the Board State Board at some time during the year, so that the result of their labors may be certified to the various County Clerks, and so that the various municipal subdivisions of the State, through their proper officers, may make suitable provisions for revenue to meet their current expenses and obligations. If this were not so, the Board at any time might reconvene and reconsider their action, and thereby disarrange the entire physical system of the State and all of its subdivisions; . . ." (Emphasis added) The Legislature has declared that the third Monday in June of each year be the date which the counties' abstract of assessment value must be delivered to the Tax Commission. It is therefore necessary to conclude that the Legislature, in enacting 68 O.S. 2459 [68-2459] (1971) did not intend to disrupt the entire ad valorem assessment system by extending the time which County Boards of Equalization in those counties having an assessed value of $500,000,000, could hold sessions. Such extension of time was primarily but not exclusively granted for the purpose of insuring that those counties will have ample opportunity to hear the protests of taxpayers filing a protest pursuant to the provisions of 68 O.S. 2460 [68-2460] (1971). This result will conform to the Oklahoma law previously established on the ad valorem assessment procedure. In Attorney General Opinion No. 73-250, it was determined that the County Assessor has no authority to make any alteration, change or amendments in the assessments after he has received the certificate of assessment from the State Board of Equalization. In the early case of Lusk, et al. v. Porter, 156 P. 224 (1916), the Supreme Court of Oklahoma was concerned therein with a problem which required an analysis of the ad valorem assessment procedure in order to arrive at a proper solution. After setting forth the assessment process which was almost identical to the present procedure, the Court states in part as follows: "From the foregoing, it will be seen that it is intended that the County Board of Equalization shall complete its labors in time so that the County Assessor may prepare and make an abstract of his assessment, as revised by said County Board, for the State Board of Equalization at its annual meeting on the third Monday in June. . . . ". . . Even were it admitted that the County Commissioners, acting as a Board of Equalization, had further jurisdiction in respect to the equalization of taxes after the action of the State Board, clearly such Board would have no authority to change, or in any manner revise, the action of the latter. In such case its duty would be to accept as final the action of the State Board, and not attempt to review the work of its superior. . . ." (Emphasis added) The above and foregoing premises and authorities considered, let us return to your specific questions. Your first question asks whether the provisions of 68 O.S. 2459 [68-2459] (1971) are constitutional. This must be answered in the affirmative. The Oklahoma Legislature has the power and authority to extend the time in which the Board of Equalization in those counties having an assessed value in excess of $500,000,000 may hold session. Various cogent reasons prompted the Legislature to provide additional time in which to hold session to those counties, including their need for adequate time within which to listen to and evaluate all protests filed under the provisions of 68 O.S. 2460 [68-2460] (1971). Such a provision is constitutional, whether the Board of Equalization raises or lowers an assessed valuation. Your second and third questions may be considered together. In responding to these questions, the relevant portion of 68 O.S. 2471 [68-2471] (1971) should be considered. That statute reads in part as follows: "The assessment roll shall be correctly footed and balanced and it shall be the mandatory duty of the county assessor as outlined under the penalties of Section 2476 of this Code to deliver the completed roll to the county board of equalization on or before the fourth Monday in April of each year, in order that said board may correct, adjust and equalize the taxable value of the property of the county. Except that in counties having an assessed valuation in excess of Five Hundred Million Dollars ($500,000,000.00) the real estate portion of said completed roll shall be delivered to the county board of equalization on or before the fourth Monday in January of each year." Prior to its amendment in 1971, the above statute required the County Assessor in each county to prepare an assessment roll and deliver the completed roll to the County Board of Equalization on or before the fourth Monday in April of each year. The County Board then had through the first Monday in June to make any adjustments on the rolls which the Board deemed necessary. The Legislature obviously contemplated that once the County Assessor turned the assessment roll, containing therein his valuation of the property within the county, over to the County Board of Equalization, the County Assessor would then lose his authority to adjust the value of the property independent of the County Board of Equalization. This conclusion is supported by two other statutory provisions. First 68 O.S. 2459 [68-2459] (1971) provides that the County Board of Equalization, not the County Assessor, has the final responsibility and authority to equalize, correct and adjust the assessed valuation of property before the abstract of the assessment roll is certified and delivered to the Tax Commission by the County Assessor. If the County Assessor were allowed to independently alter the assessment roll after said roll has been delivered to the County Board of Equalization, it would be possible for him to substitute his own assessed value for that which the County Board had determined to be proper. Second, 68 O.S. 2461 [68-2461] (1971) provides that both the taxpayer and the County Assessor have the right to appeal any order of the County Board of Equalization to the district court of the same county. If the County Assessor were allowed to change the assessment roll after the roll was delivered to the County Board of Equalization, independent of that Board, the appellate procedure provided by 2461, insofar as it pertains to the County Assessor, would be moot. The County Assessor could simply change any value fixed by the Board which was unacceptable to his own liking. Clearly such a possibility was not the intent of the Legislature. It must be concluded that the Legislature intended the County Assessor to have complete authority to establish the assessed value of property within the county up to and until such time as the assessment roll is delivered to the County Board of Equalization. Thereafter, any adjustment or correction of the assessment roll will be officially performed by the County Board of Equalization. The County Board of Equalization will likewise be without authority to adjust the assessment roll after the abstract thereof is delivered to the Oklahoma Tax Commission. Section 68 O.S. 2471 [68-2471] was amended in 1971 to require the County Assessor in those counties having an assessed valuation in excess of $500,000,000 to deliver the real estate portion of the completed assessment roll to the County Board of Equalization on or before the fourth Monday in January. The delivery date for all other County Assessors was left unchanged. This amendment did not purport to change the Legislative intent regarding the County Assessor's authority to independently adjust the assessment roll subsequent to delivering the same to the County Board of Equalization. Therefore, in those counties having an assessed valuation in excess of $500,000,000, the County Assessor may not increase the assessed value of real property after that portion of the assessment roll has been delivered to the County Board of Equalization. Prior to that time, however, there is no statutory restriction on the number of changes that the County Assessor can make in his assessment value of any particular tract of real property within the county. If the County Assessor raises the assessed value, he must give notice of the increase to the taxpayer. After the County Assessor delivers the assessment roll or portions thereof pursuant to statute to the County Board of Equalization, the Board will have the exclusive authority to increase the assessed value of all property contained therein. Accordingly, 68 O.S. 1971 2460 [68-2460] requires the secretary of the County Board of Equalization to send out a notice to the taxpayer of any increase made by the Board on the assessed value of his property. As discussed earlier, the County Board of Equalization may adjust the assessment roll until the date set for its adjournment or until the abstract thereof is delivered to the Tax Commission, whichever is earlier. It is therefore possible that a taxpayer may receive more than one notice of an increase on assessed value during the same year. Although the adjustment in value by the County Board must be made before the abstract thereof is delivered to the Tax Commission, the notice of an increase in value may not be received by the taxpayer until a later date because the statutes do not require the County Board of Equalization to give notice within a prescribed period of time. The taxpayer need not worry that more than one increase and notice of assessed value will deprive him of his opportunity to see that he is treated fairly. The ad valorem assessment system provides adequate opportunity to protest any increase in assessed value. There are also provisions for appealing an unfavorable ruling by the County Board of Equalization on the taxpayer's protest. See 68 O.S. 2460 [68-2460], 68 O.S. 2461 [68-2461] (1971), and 2469. The old version of the latter section, almost identical to the present law, was construed in Chapman v. Thompson, Okl.288 P.2d 720 (1955), and the pertinent rule was set forth in the first syllabus as follows: "Where real property has been duly assessed for purposes of taxation and a valuation is placed thereon by the assessor, for the taxable year of 1951, and the assessor thereafter increased the assessed valuation for the succeeding taxable year of 1952, without timely notice to the owner-taxpayer, or without his knowledge or consent, and he was thereby deprived of his right of appeal, his remedy is to pay the taxes under protest and proceed in accordance with the provisions of 68 O.S. 1550 [68-1550] (1951)." Even though the taxpayer is subject to having his property assessed at a higher price more than once during the same year, he may not be required to submit to more than one hearing before the County Board of Equalization. When the taxpayer appears before the County Board of Equalization to protest the increase in assessment value whether made by the County Assessor or the County Board of Equalization or both, all matters concerning the true market value of the property in question as of January 1 of the same year should be resolved. To subject the taxpayer to an additional hearing after all relevant evidence concerning the market value has been considered would place an unnecessary burden on the taxpayer. Therefore, once the taxpayer has appeared before the Board pursuant to 68 O.S. 2460 [68-2460] (1971), and the Board has made a decision as to the assessment value of the property in question, neither the Board nor the County Assessor can at a later date increase the assessment value. Your second and third questions are therefore answered in the following manner: In those counties having an assessed valuation in excess of $500,000,000, the County Assessor may increase the assessment value of real property until the real property portion of the assessment roll is delivered to the County Board of Equalization as provided by 68 O.S. 2471 [68-2471] (1971). Likewise, the County Assessor may increase the assessment value of personal property until that portion of the assessment roll is delivered to the County Board of Equalization pursuant to the same statutory provision. Thereafter, the County Board of Equalization will have the exclusive authority to adjust the assessment roll. It is therefore possible that a taxpayer could receive more than one notice of an increase in assessment value within the same year. The County Board of Equalization's authority to raise the assessed value on an item of property until an abstract of the assessment roll is delivered to the Tax Commission as provided by 68 O.S. 2473 [68-2473] (1971), is subject to one limitation. Once the taxpayer has appeared before the Board pursuant to 68 O.S. 2460 [68-2460] (1971), and the Board has made a decision as to the assessment value of the property in question, neither the Board nor the County Assessor can at a later date increase the assessment value. (James H. Gray)